**Lynn T. ROBINSON, Appellant,**

v.

**Wayne A. MINICK and E.L. Murphy Trucking Company, Appellees.**

No. 01–87–00753–CV.

Court of Appeals of Texas, Houston (1st Dist).

June 23, 1988.

Rehearing Denied Aug. 31, 1988.

Jeffery W. Steidley, Oliver & Steidley, Houston, for appellant.

Timothy D. Riley, Floyd, Taylor & Riley, Houston, for appellees.

Before JACK SMITH, COHEN and BISSETT, JJ.

## OPINION

COHEN, Justice.

Appellant sued appellees for injuries he suffered in a multiple vehicle collision and recovered a $3,400 judgment. He contends on appeal that the jury's verdict of "0" damages for past and future physical impairment was against the great weight and preponderance of the evidence. We sustain the contention as to past impairment only.

Robinson was a rear seat passenger in a vehicle that collided with another car and a tractor-trailer rig. He sued the other two drivers, Terry Thomas and Minick, and Minick's employer, Murphy Trucking Company.

Robinson suffered multiple facial fractures that required 12 hours of surgery and approximately a month of hospitalization. At trial, he claimed to suffer from chronic headaches, vision problems, numbness of the upper jaw, and loss of smell and taste. These claims were hotly disputed, and Robinson's credibility was damaged. However, it was at all times undisputed that he endured lengthy surgery and hospitalization immediately following the accident as a result of multiple facial fractures.

Robinson settled with defendant Thomas before trial. At trial, the jury assessed 95% of the fault to Thomas and 5% to Minick. The jury found that almost all of Robinson's damages were suffered in the past. It awarded Robinson $9,000 in past pain and mental anguish, $10,000 for loss of past earnings, $43,000 in past medical expenses, $5,000 in past physical disfigurement, and $1,000 for loss of future earning capacity. The jury awarded nothing for future pain and mental anguish, past physical impairment, future physical impairment, and future physical disfigurement. The trial court rendered judgment for Robinson for $3,400, which was 5% of the total damages found by the jury.

We will consider and weigh all of the evidence, both that supporting and that against the finding of $0 damages in order to decide whether the verdict should be set aside. We will uphold the jury's verdict unless it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Evidence contrary to the verdict includes the testimony of appellant's plastic surgeon, Dr. Jean Cukier, who testified that appellant suffered skull and facial fractures so severe that spinal fluid dripped from his nose, requiring 12 hours of surgery and the wiring of his face and jaw together. Appellant was hospitalized for approximately a month, and contracted meningitis as a result of his injuries.

Dr. Cukier testified that the last time he saw appellant as a patient, appellant complained of loss of smell and taste. Cukier testified that such loss would be consistent with appellant's injuries and would be permanent, and appellant testified that he never regained his sense of smell and had very little taste. There was evidence, however, that could have caused the jury to doubt appellant's claims of loss of smell and taste. Dr. Cukier testified that there are no tests to determine the validity of complaints of lost smell and taste; that such complaints are subjective; and that the doctor must rely wholly on the patient's

complaints. Dr. Cukier testified that he would have expected appellant to contact him if the loss of smell and taste and other complaints had become unbearable, but that appellant had not sought treatment from him in more than two and a half years prior to trial.

Appellant also complained of blurred and double vision, and numbness across the top of his teeth. Dr. Cukier testified that appellant had complained to him of these symptoms; that appellant's eyes were "somewhat misaligned" so that the muscles were not working in coordination, resulting in double vision and blurred vision. Cukier testified that these problems had been documented by an opthalmologist. There was evidence, however, from which the jury could have doubted these complaints. Dr. Cukier stated that he had never treated appellant for double vision because he was not an eye specialist. Appellant was treated by an opthalmologist, Dr. Alan Baum, whose records were admitted in evidence. Baum's records made no references to complaints of blurred or double vision in any of appellant's seven office visits. Baum performed cataract surgery on appellant in February and March of 1984. The jury heard evidence that the attorney then representing appellant had asked Dr. Baum to issue a report that the cataracts were caused by the accident. Baum declined to do so. The jury also heard evidence that appellant had driven to Florida several times within six months of the accident, which appellant explained by stating that another person did most of the driving and that he had since stopped driving because of poor vision. Appellant stated on cross-examination that he wore glasses only for reading and that he saw better without them. He admitted that he had not seen a doctor in over a year.

Appellant claimed to suffer from chronic headaches, lasting 45 minutes or longer every morning and up to a half an hour if he coughed or sneezed too much. He claimed to suffer headaches, dizziness, and blackouts if he did anything as strenuous as changing a tire. Dr. Cukier testified that appellant would probably continue to have chronic headaches and that the nerve damage to his face was permanent. There was evidence, however, from which the jury could have doubted these complaints. Appellant admitted that he had not seen a doctor in more than a year and that the only medication that he was taking was Bufferin.

Except for the facial fractures, surgery, and initial hospitalization, appellant's claimed injuries were subjective and depended for their proof upon his credibility. Appellant's credibility was damaged at trial. He swore in answer to interrogatories to an income of $18,000 every year from 1978 to 1982. On direct examination at trial, he testified that he earned $5,000 per year during that time. He later admitted under cross-examination that he had never earned as much as $5,000 in any of those years. Appellant claimed good recall of the fact that a front seat passenger had bought certain specific food items at a convenience store just before the accident. However, he could not recall whether the passenger in the back seat with him had purchased beer. Moreover, the record contains a letter from Dr. Baum to Baum's attorney, stating that appellant had broken his promise to deliver Medicare checks to Dr. Baum, and had claimed to have delivered the checks instead to appellant's attorney. The letter relates that appellant's attorney denied knowledge of the Medicare checks, thus contradicting appellant's explanation to Dr. Baum.[1] The letter relates that when appellant's attorney was contacted concerning the Medicare checks by Dr. Baum's representative, the attorney requested a narrative report "hoping to show a relationship between the accident and (appellant's) cataracts [and] said if it was related he could secure our money from the settlement...."

■ The general rule is that a jury must award something for every element of damage resulting from an injury. *DuPree v. Blackmon,* 481 S.W.2d 216, 219 (Tex.Civ.

---

1. Nothing in the partial statement of facts before us indicates that this letter, whose admissibility is, to say the least, doubtful, was excised from the lengthy exhibit of which it was a part.

App.—Beaumont 1972, writ ref'd n.r.e.). Here, appellant's headaches, loss of smell and taste, dizziness, poor vision, and upper jaw numbness are all subjective and dependent upon his testimony. Appellant's credibility and the weight to be given his testimony was a question for the jury, which had reason to doubt the claims concerning these particular symptoms of past and future physical impairment.

The same is not true, however, concerning the undisputed evidence of appellant's facial fractures, surgery, and hospitalization. These indications of past physical impairment were undisputed, independently proved, and did not rely upon appellant's credibility.

■ Appellees argue that "physical impairment" is a separate element of damages, above and beyond pain, suffering, mental anguish, disfigurement, and loss of wage earning capacity, and should be limited to extremely disabling injuries. The often cited definition is found in *Green v. Baldree,* 497 S.W.2d 342 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ):

> [T]he plaintiff must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated.

497 S.W.2d at 350.

Thus, in *Landacre v. Armstrong Building Maintenance Co.,* 725 S.W.2d 323 (Tex. App.—Corpus Christi 1986, writ ref'd n.r. e.), it was not against the great weight and preponderance of the evidence for the jury to refuse to award damages for physical impairment to a woman who suffered a permanent shortening of her left arm, accompanied by a difficulty with flexion and extension, who had only 50% of normal range of motion, and would have a "frozen shoulder" for life. Similarly, the jury was not required to award damages for physical impairment, in addition to other damages that it awarded, to a plaintiff with a "30% functional loss" to his knee following surgery for a "severe" injury. *Platt v. Fre-*

*gia,* 597 S.W.2d 495 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.).

Appellees make two arguments in support of the judgment. First, they assert that appellant's injury was not "substantial" enough to demonstrate a physical impairment above and beyond that which was compensated by the jury's awards for past pain and mental anguish, past lost earnings, past medical expenses, and past physical disfigurement. *See Platt v. Fregia,* 597 S.W.2d 495; *Landacre v. Armstrong Building Maintenance Co.,* 725 S.W.2d 323. Second, appellees argue (and appellant agrees) that there is no Texas case in which a jury answer of $0 on physical impairment *alone* was reversed as being against the great weight and preponderance of the evidence. Appellees point out that "every case cited by appellant concerns situations in which there was an undeniable physical injury and the jury refused to award monetary damages for *every* intangible element of recovery, including pain and suffering."

Our review of this difficult area of the law is hampered by the absence of supreme court authority. The intermediate appellate courts have shown extreme caution in reviewing claims for physical impairment because of justified concern to prevent a double recovery. *See Green v. Baldree,* 497 S.W.2d 342, 348–50. This caution is nowhere more evident then in *French v. Grigsby,* 567 S.W.2d 604 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.):

> [T]he separate submission of an issue on physical impairment is *sometimes* proper; ... this is one of the unusual cases wherein such submission was authorized.

567 S.W.2d at 607 (emphasis in original).

And in *Green v. Baldree,* the court wrote:

> [I]n almost all [physical impairment] cases, if not all of them, the defendant would be entitled, on request, to have the court submit a special instruction that would be calculated to prevent the jury from allowing a double recovery.

497 S.W.2d at 350. The award in *Green* that prompted the above discussion was for only $2,250. *Id.* at 347.

At least one case upheld a past physical impairment award for an injury much less serious than appellant's. In *Riley v. Norman*, 275 S.W.2d 208 (Tex.Civ.App.—El Paso 1954, writ ref'd n.r.e.), an instruction on physical impairment was upheld where the only physical impairment was "a scar on the forehead and at least a temporarily swollen knee." 275 S.W.2d at 209. Thus, the cases do not always require a grievous injury.

We note that appellant's past physical impairment exceeded that which was upheld in *Green v. Baldree*. In *Green*, a $250 award for past physical impairment was upheld on evidence showing $1,000 in past medical expenses (compared to $43,000 here); a hospital stay of a week (compared to a month here); a "probable" pinched nerve and ruptured disc in the lower back, which was denied by defendant's medical expert (compared to undisputed evidence of multiple fractures and lengthy surgery here).

We find that the undisputed, objective evidence of substantial injury to appellant exceeded that which was enough to support judgments for plaintiffs in *French v. Grigsby*, *Green v. Baldree*, and *Riley v. Norman*. Moreover, it exceeded that which was insufficient to conclusively prove physical impairment as a matter of law in *Landacre* and *Platt v. Fregia*.

We recognize that the amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. Nevertheless, when we apply settled law that requires a jury to award something for every element of damage proven, to the undisputed, objective evidence of severe physical impairment in the past, we cannot escape the conclusion that the jury's finding of $0 is against the great weight and preponderance of the evidence.

Appellees argue that reversal is appropriate only where the jury has refused to award monetary damages for *every* intangible element of recovery, including pain and suffering, and point out that the jury awarded some damages for every form of past loss except past physical impairment. Appellees argue:

The evidence ... in support of the impairment issue undoubtedly was considered by the jury in reaching its award figures for physical pain, mental anguish, lost wages, wage earning capacity, and physical disfigurement. In submitting such damage issues to the jury, 'there is clearly a possibility of some overlapping and blending in the issues as submitted.' *Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751, 760 (Tex. Civ.App.—San Antonio 1977, no writ).

Appellees cite three recent decisions unanimously affirming jury verdicts of $0 for past and future physical impairment when monetary damages were awarded for other intangible elements, and point out that the supreme court found no reversible error in each case. *Landacre v. Armstrong Building Maintenance Co.*, 725 S.W.2d 323; *Platt v. Fregia*, 597 S.W.2d 495; *Rosenblum v. Bloom*, 492 S.W.2d 321 (Tex.Civ. App.—Waco 1973, writ ref'd n.r.e.).

This argument requires us to assume that the jury's demonstrated error in failing to award damages for past physical impairment was cured by its presumed error of considering past physical impairment in determining how much to award for other losses. Such a standard of review would have us decide whether we thought the jury verdict as a whole was large enough, and if so, to not review the evidence on the past physical impairment issue. In fact, appellees candidly argue for that approach. They say that it is "not proper ... to isolate a single overlapping element from the jury verdict as a whole...." Yet that is exactly what we are required to do in order to afford appellate review of a special issue verdict. *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986). Indeed, an important reason for using special issues is to enable all parties to have specific appellate review of each jury finding, unlike the general review that is given to a general verdict. We cannot refuse to apply settled law to undeniable facts, just because we think that a party got what he deserved.

▮ If, as appellees argue, the jury "undoubtedly" considered past physical impairment in making its award for other ele-

ments of damage, this might have been prevented by a limiting instruction like that in *French v. Grigsby,* 567 S.W.2d at 608, which the court could not have properly refused. *See Green v. Baldree,* 497 S.W. 2d at 350. No such instruction was given here. In any event, we cannot approve the erroneous total denial of compensation for a proven element of damages, based on questionable speculation that appellant may have been overcompensated on others.

We hold that the trial court erred in overruling appellant's motion for new trial because the jury's answer of $0 damages for past physical impairment was against the great weight and preponderance of the evidence. The first point of error is sustained.

■ We hold that the trial court did not err in overruling appellant's motion for new trial based on the jury's answer of $0 damages for future physical impairment. In view of the subjective evidence of the future physical impairment claimed and the damage to appellant's credibility that occurred at trial, the verdict on future impairment was not against the great weight and preponderance of the evidence. The second point of error is overruled.

The judgment is reversed, and the cause is remanded to the district court.