**ROSENBOOM MACHINE & TOOL, INC., Computed Imaging Service, Inc., and Dynamics Corporation Of America d/b/a Ellis & Watts, Appellants,**

v.

**Josephine MACHALA, Appellee.**

No. 01–97–00916–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 3, 1999.

Rehearing Overruled Aug. 6, 1999.

Lisa A. Powell, Richard E. Griffin, Houston, Patrick P. Rogers, Austin, Kirby Cronin, Vance Christopher, Houston, for Appellants.

David A. Carp, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and ANDELL.

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

This is an appeal from a personal injury action where a jury awarded appellee, Josephine Machala ("Josephine"), a $279,526.04 judgment. Appellants contend: (1) the trial court erred in refusing to submit a determination of comparative responsibility question to the jury; (2) the trial court erred in submitting a physical impairment question to the jury because it was not pled by Josephine; and (3) there was no evidence or factually insufficient evidence to support the jury's award of damages for past and future physical impairment, future medical care, and future physical pain and mental anguish. We affirm in part and reverse in part.

### Facts and Procedural History

Josephine, who was sitting in a wheelchair, was being lifted into a mobile CT-scan truck when the hydraulic lift raising Josephine failed, causing her to fall approximately four feet to the ground. As a result, she suffered a fractured vertebrae. The lift failed because a component of the hydraulic cylinder, designed and manufactured by Rosenboom Machine & Tool, Inc. ("Rosenboom"), was defective.

Rosenboom sold the hydraulic cylinder to Venco Manufacturing, Inc. ("Venco") in 1984. Venco manufactured the lift mechanism that incorporated the Rosenboom cylinder. Dynamics Corporation of America d/b/a Ellis & Watts ("Dynamics") manufactured the CT truck in the early 1980s, incorporating the hydraulic lift mechanism. Computed Imaging Service, Inc. ("Computed") owned the CT truck, which it purchased from a third party in 1993.

Josephine sued all four defendants (collectively "defendants") on a strict products liability theory, alleging the CT truck and the hydraulic lift were defectively designed and manufactured, resulting in an unreasonably dangerous product unsuited for its intended use. Josephine also asserted negligence claims against Computed, gross negligence and punitive damage claims against Dynamics, and gross negligence claims against Rosenboom.

On the day trial was to begin, the appellants stipulated they were liable under Josephine's strict liability claim. They further stipulated that Josephine was entitled to recover actual damages that would fairly and reasonably compensate her for her injuries. On the second day of trial, Josephine settled with Venco for $230,000.00. After closing arguments, but before the jury returned with a verdict, Josephine settled her gross negligence and punitive damage claim against Dynamics for $7,500.00. The only issues presented to the jury were damages and Josephine's gross negligence claim against Rosenboom. The jury found no gross negligence on the part of Rosenboom, but awarded Josephine $350,000.00 for past physical pain and mental anguish, $50,000.00 for future pain and mental anguish, $90,000.00 for past and future physical impairment, and $10,-000.00 for future medical care and expenses. The trial court subsequently signed a judgment awarding Josephine $279,526.00, which reflected credits for the

$230,000.00 Venco settlement and judgment interest and costs.

### Determination of Comparative Responsibility

Appellants first contend the trial court committed reversible error in failing to submit a determination of comparative responsibility question to the jury in accordance with section 33.001 of the Texas Civil Practice and Remedies Code. They argue that as a result of this error, we should render judgment in their favor.[1] We disagree.

Section 33.003 provides:

The trier of fact, *as to each cause of action asserted,* shall determine the percentage of responsibility [2] with respect to:

(1) each claimant;

(2) each defendant; and

(3) each settling person.

TEX. CIV. PRAC. & REM.CODE. § 33.003 (Vernon 1987) (emphasis added). According to the appellants, without a percentage of comparative responsibility finding, no defendant can be held jointly and severally liable. Therefore, the trial court could not enter a valid judgment in Josephine's favor. Josephine, on the other hand, alleges that the appellants' stipulation removed strict liability as an issue in the case. As a result, Josephine contends she was prevented from putting on sufficient liability evidence to enable the trier of fact to

1. Appellants contend we should render judgment in their favor because Josephine failed to prove an essential element of her claim—the percentage of liability of each defendant. Defendant cites no case law for this argument and relies solely on the wording of section 33.013 of the Civil Practice and Remedies Code. We disagree with appellants' contention. To recover on a strict product liability theory, Josephine need only establish: (1) that the defendant's product was defective and unreasonably dangerous; and (2) that this defective condition caused her injuries. *Lucas v. Texas Indus., Inc.* 696 S.W.2d 372, 377 (Tex.1984); *Thiele v. Chick*, 631 S.W.2d 526, 530 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Obtaining a percentage of liabil-

ity finding is not an essential element of Josephine's claim.

2. "Percentage of Responsibility" is defined as "the percentage attributed by the trier of fact to each claimant, each defendant, or each settling person with respect to causing or contributing to cause in any way, whether by negligent act or omission, *by any defective or unreasonably dangerous product*, by other conduct or activity violative of the applicable legal standard, or by any combination of the foregoing, the personal injury, property damage, death, or other harm for which recovery of damages is sought." TEX. CIV. PRAC. & REM CODE § 33.001(4) (Vernon 1987) (emphasis added).

apportion fault, and, therefore, the trial court properly refused to submit a comparative responsibility question to the jury. We agree with Josephine's position.

### The Stipulation

On the day trial was to begin, Patrick Rogers, counsel for Dynamics, on behalf of all defendants, read the following stipulation into the record:

> [Counsel for Dynamics]: Your Honor, I've been appointed by the defendants to read this trial stipulation *for the purpose of this record and for the purpose of the Court in an effort to, an attempt to streamline the issues involved in this particular case.* The Stipulation that the defendants have agreed to for the Court and for the purpose of the Court's record is as follows: For this trial and under the facts of this case, and due to the law of strict liability as applicable to this case, these defendants stipulate that Mrs. Machala is entitled to recover actual damages which would fairly and reasonably compensate her for personal injuries caused by the accident in question, due to the product defect in the Rosenboom cylinder and Venco liftgate as assembled in question, which was in use at the Bellville Hospital on July 20, 1994. Therefore, because of this, these defendants stipulate to liability pursuant to a theory of strict product liability. (emphasis added).
>
> [Counsel for Venco]: I represent Venco Manufacturing and that is our stipulation as well.
>
> [Counsel for Rosenboom]: I represent Rosenboom. That is our stipulation.
>
> [Counsel for Dynamics]: I represent Dynamic Corporation of America and that is our stipulation.
>
> [Counsel for Computed]: I represent Computed Imaging and that is our stipulation with the caveat that we do not stipulate that we are a party subject to the law of strict liability or products liability in this case.
>
> [Counsel for Dynamics]: *It's a damages case, now, Your Honor.* (emphasis added).

Following the stipulation, this exchange took place:

> [Counsel for Josephine]: Your Honor, that catches the plaintiffs by surprise. I had asked them on prior occasions about that and they come today and they say they are going to do it and now my trial has been prepared by proving damages. We have entered into a Rule 11 Agreements that they would have their corporate representatives here so I could call them as adverse witness and start my case.
>
> . . .
>
> [The Court]: Let's look at it this way, Mr. Elick. If, how much time will it take to you try the damages portion of the case?
>
> Counsel for Josephine: Well, two aspects. Actual damages, and punitive damages. I allocated for actual damages, a day. I don't have—today was going to be my actual damages liability case. So we have got actual damages on doctors and medical and other clients and I hadn't scheduled them. I set them up for tomorrow.
>
> The Court: Well, here is what I am going to suggest. I understand it might take some retooling of your presentation but we could pick the jury today and start evidence tomorrow.
>
> Counsel for Venco: That is agreeable to us, Your Honor.
>
> Counsel for Dynamics: That would be fine.

### The Applicable Law

■ "A stipulation is an agreement, admission, or [other] concession made in a judicial proceeding by the parties or their attorneys." *Hansen v. Academy Corp.,* 961 S.W.2d 329, 336 (Tex.App.—Houston [1st Dist.] 1997, writ denied); *Federal Lanes, Inc. v. City of Houston,* 905 S.W.2d 686, 689 (Tex.App.—Houston [1st Dist.] 1995, writ denied). A stipulation constitutes a binding contract between the parties and the court. *Federal Lanes,* 905

S.W.2d at 689. In any case, the issues to be tried may be limited or excluded by stipulation. *Hansen,* 961 S.W.2d at 336. Where a stipulation limits the issues to be tried or considered by the jury, those issues are excluded from consideration. *Federal Lanes,* 905 S.W.2d at 689. Moreover, a stipulation "obviates the need for proof on [the] litigable issue." *Hansen,* 961 S.W.2d at 335.

 If the stipulation is ambiguous or unclear, it should be disregarded by the trial court. *Id.; Discovery Operating, Inc. v. Baskin,* 855 S.W.2d 884, 886–87 (Tex. App.—El Paso 1993, no writ). In construing a stipulation, a court must determine the intent of the parties from the language used in the entire agreement, examining the surrounding circumstances, including the state of the pleadings, the allegations made therein, and the attitude of the parties with respect to the issue. *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 734 (Tex.App.—Corpus Christi 1994, writ denied); *Discovery Operating, Inc.,* 855 S.W.2d at 886–87. However, a stipulation should not be given greater effect than the parties intended, and should not be construed as an admission of fact intended to be controverted. *Austin v. Austin,* 603 S.W.2d 204, 207 (Tex.1980).

### Discussion

 Appellants contend they never stipulated to joint and several liability. We agree. However, the appellants, as evidenced by the language of the stipulation and their conduct at trial, intended to: (1) remove strict liability as an issue in the case; and (2) prevent Josephine from putting on any evidence relating to her strict liability claim.

First, at the pre-trial exhibit conference, where Josephine's counsel sought to have evidence of a similar prior accident admitted, counsel for Venco stated:

> We have stipulated as to defect. There is no obligation or allowance for the plaintiff to put on evidence of a defect. *The only issues remaining before this court are damages and gross negligence.*

*This is absolutely not relevant and not allowable. It would be reversible error to admit this type of evidence.* (emphasis added).

Additionally, when Larry Rosenboom was being questioned by Josephine's counsel, this exchange took place:

> Q: I am asking you, do you know, and I repeat my question, did you know yesterday in this courtroom, in this case, and before this Judge, that you or attorney for Rosenboom Machine and Tool Company, stipulated that this cylinder that you made in 1984 was defective by its design? Its design was unreasonably dangerous, and number two, the manufacture of it, the way you built it, that was unreasonably dangerous?

> [Counsel for Rosenboom]: Let me object. The stipulation was as to the whole lift assembly, not just the cylinder.

> [The Court]: Counsel, would you approach please.

> . . .

> [Counsel for Rosenboom]: Judge, I think, for the record, *the purpose of the stipulation is to eliminate issues. It was for the Court only. And to cross examine this witness on a stipulation to eliminate, streamline the trial is improper, and I will object to the reading of the stipulation.* (emphasis added).

> [The Court]: But you can't have it both ways. If you stipulate, then deny what you stipulated, you can't deny what you stipulated to.

Appellants essentially ask this Court to give effect to their stipulation with respect to Josephine's strict liability claim, but at the same time ignore the stipulation's effect on the jury's ability to apportion fault. Based on the facts of this case, we cannot reach such a result. The appellants' stipulation removed, in its entirety, strict liability as an issue at trial. In appellants' words, the purpose of the stipulation was to "streamline" and "eliminate" issues for trial. According to counsel for Venco, the

only remaining issues were "damages and gross negligence."

This is not to say that Josephine was precluded from putting on any liability evidence. However, in almost every instance where she attempted to put on evidence relating to her strict liability claim, the appellants objected on the basis that the stipulation removed those issues from consideration. Thus, a subsidiary effect of the appellants' stipulation and their conduct at trial, was that Josephine was prevented from putting on sufficient evidence to enable the trier of fact to apportion fault. Appellants' assert that even in light of their stipulation and their conduct at trial, they were entitled to a jury question allocating comparative fault. We disagree because the appellants are bound by the language and effect of their stipulation. *See Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458, 466 (Tex.1969) (noting vital feature of stipulation is that it is conclusive on party making it). Therefore, we find that the trial court did not err in refusing to submit a percentage of comparative responsibility question to the jury.[3]

We overrule appellants first issue presented.

### Past and Future Physical Impairment

Appellants also allege the trial court erred in submitting a past and future physical impairment question to the jury because Josephine failed to plead for physical impairment damages.

### Standard of Review

In determining whether the trial court erred in submitting a question to the jury, we employ an abuse of discretion standard. *Island Recreational Dev. Corp. v. Repub-*

*lic of Texas Sav. Ass'n,* 710 S.W.2d 551, 562 (Tex.1986). If we determine the trial court acted arbitrarily and unreasonably, then we must examine the pleadings, evidence, and the jury charge to determine if the error is harmful. *Id.* We will reverse the decision of the trial court only if the error complained of probably caused the rendition of an improper judgment or probably prevented the appellants from properly presenting their case to the court of appeals. *Id.;* Tex.R.App. P. 44.1(a)

### The Applicable Law

■ The trial court must submit jury questions that are raised by the written pleadings and the evidence. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992); Tex.R. Civ. P. 278. To support submission of a jury question, the pleadings must give the opposing party fair and adequate notice of the facts upon which the pleader relies so that the opposing party has sufficient notice and information to prepare his defense. *Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636 (Tex.1982). Thus, in determining whether Josephine's pleadings were sufficient to support a question on physical impairment, we focus on the notice her pleadings provided the appellants, and their opportunity to prepare a defense on her physical impairment claim.

■ Pleadings must "consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense." *Willock v. Bui,* 734 S.W.2d 390, 392 (Tex.App.—Houston [1st Dist.] 1987, no writ); Tex.R. Civ. P. 45(b). Fair notice has been given if the pleadings are sufficiently specific so that an opposing attorney of reasonable

3. We note that even without an apportionment question, no one appellant would have been forced to pay the entire amount of the judgment. The record indicates the appellants entered into a joint defense agreement apportioning their liability. In discussing the Venco settlement, counsel for Venco stated that the remaining defendants had entered into an amended joint defense agreement. When counsel for Computed requested the

determination of comparative responsibility question, he referenced the defense agreement stating they agreed to pay only 20% of the judgment. Finally, the judgment provided that the "Defendants had ... entered into a Settlement Agreement among Defendants in which percentages were agreed upon for apportionment of payment of actual damages." In light of the defense agreement, a jury finding allocating fault would have been moot.

competence can ascertain from the pleadings the basic issues of the controversy and the probable relevant testimony. *Estate of Menifee v. Barrett,* 795 S.W.2d 810, 812 (Tex.App.—Texarkana 1990, no writ).

### Discussion

■ Josephine's Second Amended Original Petition, her live pleading at the time of trial, provided in pertinent part:

> As a direct and proximate result of Defendants' conduct, Plaintiff Josephine Machala has suffered serious and disabling injuries, being primarily a fractured vertebrae. In addition, Plaintiff has suffered severe physical and mental pain, suffering and anguish, and in all reasonable probability, Plaintiff will continue to suffer in this manner for a long time into the future, if not for the balance of her natural life. As a result of the injuries sustained, Plaintiff has incurred reasonable and customary medical expenses, and will incur additional reasonable and necessary expenses for medical care, nursing home care, and other economic losses, *in an amount in excess of the minimal jurisdictional limits of this Court.*

Appellants contend this pleading failed to provide sufficient notice that Josephine was seeking damages for past and future physical impairment. They argue that Josephine's pleading does not mention physical impairment or allege facts which would suggest she was seeking physical impairment damages. We disagree.

In her petition, Josephine alleged that as a result of the appellants conduct she suffered "serious and disabling injuries, being primarily a fractured vertebrae." Josephine then alleged she suffered *additional damages* as a result of her fall, which included pain and suffering, future pain and mental anguish, and past and future medical expenses and care. We find this language sufficient to put a attorney of reasonable competence on notice that Josephine was seeking damages for past and future physical impairment. Moreover, no special exceptions were filed directed at Josephine's pleadings, and the

record indicates that appellants were prepared to and did defend against such a claim.

Appellants elicited extensive testimony from both Dr. McKeever, Josephine's doctor, and Dr. Southern, a defense expert, regarding other possible causes of Josephine's physical impairment. The appellants argued at trial, and now on appeal, that Josephine's physical impairment resulted from her failure to follow her own doctor's advice regarding exercise, her failure to take her prescribed medication, her excessive weight, and her preexisting conditions, which included osteoporisis, osteoarthritis, scoliosis, kyphosis, and lordosis.

Based on this evidence, we find that Josephine's pleading provided sufficient notice to appellants of her claim for physical impairment damages and provided appellants an opportunity to properly prepare their defense.

■ Appellants also contend it is improper to submit physical impairment as a separate element of damages independent of damages for pain and suffering and mental anguish. They argue recovery for physical impairment is limited to instances where the plaintiff proves that the impairment extends beyond lost earning capacity or physical pain and mental anguish such that it produces a separate and distinct loss of activity, capacity, or function. We disagree because awards for physical impairment do not always require egregious injuries. *Robinson v. Minick,* 755 S.W.2d 890, 894 (Tex.App.—Houston [1st Dist.] 1988, writ denied)

Here, the evidence indicates that as a result of her fall, Josephine suffered a fractured vertebrae requiring approximately two weeks of hospitalization. The testimony at trial further showed that Josephine was unable to perform most of the daily activities she engaged in prior to her fall. Physical impairment damages have been upheld in cases where the physical impairment was less serious than Josephine's. *Id.* (citing *Riley v. Norman,* 275

S.W.2d 208, 209 (Tex.Civ.App.—El Paso 1954, writ ref'd n.r.e.) (upholding award of physical impairment damages where individual suffered scar on forehead and temporarily swollen knee); *Green v. Baldree,* 497 S.W.2d 342, 348–50 (Tex.App.—Houston [14th Dist.] 1973, no writ) (upholding award of physical impairment damages where individual stayed in hospital one week and suffered pinched nerve and ruptured disk in lower back); *French v. Grigsby,* 567 S.W.2d 604, 607–08 (Tex. App.—Beaumont 1978, writ ref'd n.r.e.) (upholding award of physical impairment damages where as a result of accident individual was no longer able to enjoy athletic lifestyle enjoyed before the accident)). Moreover, Josephine's impairment exceeded injuries that were insufficient to prove physical impairment as a matter of law. *Robinson,* 755 S.W.2d at 891.

■ Finally, appellants contend that submission of physical impairment as an element of damages in addition to physical pain and mental anguish results in an impermissible double recovery.

Texas appellate courts have shown extreme caution in reviewing claims for physical impairment because of their concern that a trial court may award a plaintiff an impermissible double recovery. *Robinson,* 755 S.W.2d at 893; *French,* 567 S.W.2d at 607; *Green,* 497 S.W.2d at 348–50. In *Robinson,* we stated that even if the jury "undoubtedly" considered past physical impairment in making its award for other elements of damages, this could have been prevented by an instruction similar to the type given to the jury in *French v. Grisby.* *Robinson,* 755 S.W.2d at 894–95. In *French,* the instruction to the jury provided:

> In answering this special issue you shall not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss, that is, do not compensate twice for the same loss if any.

567 S.W.2d at 608; *see also Texas Farm Products Co. v. Leva,* 535 S.W.2d 953, 959 (Tex.Civ.App.—Tyler 1976, no writ) (rejecting double recovery claim where trial court gave similar instruction to jury).

Similar to the instruction in *French,* question one presented to the jury in the present case provided:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Josephine Machala for her injuries, that resulted from the occurrence in question?
>
> *Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element.* Do not include interest on any amount of damages you find. (emphasis added).

The trial court's instructions in this case, like the instructions given in *French* and *Texas Farm Products,* prevented the jury from awarding Josephine an impermissible double recovery.

We find the trial court did not err in submitting a physical impairment question to the jury. We overrule appellants' second issue presented.

### Factual and Legal Sufficiency

Finally, appellants contend there was no evidence or factually insufficient evidence to support the jury's award of damages for (1) past and future physical impairment; (2) future medical care; and (3) future pain and mental anguish.

### Standard of Review

When "no evidence" and "factual sufficiency" points of error are raised on appeal, we address the "no evidence" point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing "no evidence" points, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). If there is any evi-

dence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman,* 760 S.W.2d at 242; *Hollander v. Capon,* 853 S.W.2d 723, 726 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

In reviewing a factual sufficiency point, we will not substitute our opinion for that of the trier of fact. *Hollander,* 853 S.W.2d at 726. We consider and weigh all of the evidence, and will set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

### Past and Future Physical Impairment

First, appellants allege there is no evidence to support the jury's award of damages for past and future physical impairment.

Reviewing the record in light most favorable to the award, we note that before Josephine's fall she enjoyed, to say the least, an active lifestyle. The testimony of her son, Ronald Lee Machala, and her daughter-in-law, Kelly Machala, indicated that Josephine engaged in many daily activities. The record indicates she helped her husband at his garage by greeting customers, cleaning up, and paying the bills. Ronald and Kelly also indicated that prior to the accident Josephine enjoyed tending to her garden, mowing her yard, walking every afternoon, cleaning around the house, and attending church. However, after the accident, Kelly and Ronald testified that Josephine was, and still is no longer able to engage in these activities. Josephine herself testified that after the accident she could no longer participate in the many activities she enjoyed prior to the accident.

Viewing this evidence in the light most favorable to verdict, and disregarding all evidence to the contrary, we find there is more than a scintilla of evidence supporting the jury's award of physical impairment damages. *See Minnesota Min. and Mfg. Co. v. Nishika Ltd.,* 953 S.W.2d 733, 738 (Tex.1997).

■■■ Thus, we turn to appellants' contention that the evidence is factually insufficient to support the jury's award of physical impairment damages. In addition to the evidence outlined above, Dr. McKeever testified that as a result of her fall, Josephine suffered a fracture of one of the vertebral bones in her spine, which he referred to as a "crushed fracture." He testified that at the time of the accident approximately 20% of the T12 bone in her back was crushed. According to Dr. McKeever:

[O]nce the bone crushes like this, you have disrupted the structure of the front of the vertebrae. So that there is no support in the front and then as time goes on it just collapses right down until there is nothing left. So like having a bone with a bunch of cracks through it, then every time you stand up, walk and or anything, it just gets smushed more and more.

Q: Okay. Now, was that crushing that is depicted, the situation with her back bone when she fell and when they took those x-rays at that time, and the x-rays two and a half years later, you took, showing 95% crushing, was that all caused from this fall that crushed her back bone.

A: Yes, sir.

. . .

Q: Now, Mrs. Machala, is she to blame or is she the cause that her bone has fractured down to 90%?

A: No, sir.

Dr. McKeever also testified that prior to the accident, Josephine was extremely active and in good health. However, due to the crushed fracture, she would suffer physical impairments because her condition causes considerable strain on her back when sitting up straight, standing, and walking around.

Conversely, appellants contend that Josephine's physical impairment was caused not by her injuries, but by Josephine's

failure to take her prescribed medication and follow Dr. McKeever's orders regarding exercise. On cross examination, Dr. McKeever testified:

A: Well, I usually talk to the patients about Vitamin B. It is important to help calcium absorption. I talked to her about trying to increase her activity, some sort of exercise program.

Q: Did you recommend to try to do some walking, too?

A: Yes, sir.

Q: And would it be correct to say that normally when you have a crushed fracture, normally, they heal satisfactorily after a few months?

A: In younger people, they heal, and in older people with osteoporosis, it takes three months. If the fracture doesn't just get worse and worse and worse, they will be healed in about three months. But if it keeps breaking and it keeps collapsing, each time it does that, it is painful and then that will try to heal and then it breaks some more and it is painful. So sometimes it takes a long time.

Q: Do you know whether or not your records indicate that Mrs. Machala was not taking the calcium and Didronel?

A: I believe that she did not at the time start on a religious program of following the recommendations that I made concerning her osteoporosis.

Q: Okay. So basically, she wasn't, I think you just said she wasn't following your recommendations on the calcium, Didronel and the walking or do you—do you know?

A: ... I don't think she was taking the medication properly.

Q: Did you indicate to her that walking around would be the best exercise?

A: Yes, sir.

Q: Just being active, getting around, doing things, that is the best thing that you would expect a women of her age to do?

A: Yes, sir.

Q: And in your opinion, one of the reasons that you said she should walk and get around and try to be as active as she could would be to try to decrease the pain, that is something that you would hope to achieve, is that fair?

A: Yes, sir. One thing.

Q: And exercise, walking, what would be appropriate for, for Mrs. Machala, getting around and doing as much as she can in order to try to help her and make her better, is that correct?

A: Yes, sir.

Q: Let me ask you this. Try to make sure I have got this right. If Mrs. Machala started taking Phosomax, taking calcium, doing her exercise, I think you said walking and getting around, if she did that, form that point until the future, that could improve her condition, is that correct? Might increase, might decrease pain, and increase mobility, is that a fair statement?

A: Yes, sir.

. . .

Q: Do you happen to know if Mrs. Machala has any limitation in the range of movement in her hips because of the arthritis?

A: I don't think so. I would expect ... that she would have some decreased range of motions. She certainly wouldn't be like she was when she was twenty, but I don't recall that she has a severe restriction in her range of motion.

Q: All right. Dr. McKeever, have you placed any restrictions on Mrs. Machala because of the injury she sustained in the accident?

A: No. I haven't specifically talked to her about restrictions.

While there is conflicting evidence regarding the cause of Josephine's physical impairments, after reviewing all of the evidence, we cannot say that the jury's award of past and future physical impairment damages is so weak as to be clearly wrong and unjust. *See Russell v. Hankerson*, 771 S.W.2d 650, 652 (Tex.App.—Corpus Christi 1989, writ denied) (finding zero

damage award for physical impairment against great weight and preponderance of evidence where evidence indicated plaintiff could not work, go to store, perform household chores or take part in leisure activities as a result of injury); *Allen v. Whisenhunt*, 603 S.W.2d 242 (Tex.Civ. App.—Houston [14th Dist] 1980, writ dism'd w.o.j.) (finding evidence that plaintiff could no longer mow lawns or play basketball sufficient to support physical impairment damage award).

We overrule appellants' third and fourth issues presented.

## Future Medical Expenses

■ Appellants further allege there is no evidence or factually insufficient evidence to support the jury's award of $10,000 for future medical expenses.

In considering the legal sufficiency of the evidence to support an award of future medical expenses, we must examine the entire record for any probative evidence and disregard all evidence to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *City of San Antonio v. Vela*, 762 S.W.2d 314, 320 (Tex.App.—San Antonio 1988, writ denied). Appellants contend that the evidence is legally insufficient to support the jury's award because Texas law requires "that there be evidence in the record establishing the reasonable value of past medical treatment and to establish the probable necessity of future medical treatment." *Thate v. Texas & Pac. Ry. Co.*, 595 S.W.2d 591, 601 (Tex.Civ.App.— Dallas 1980, writ dism'd w.o.j.). We agree.

■ Texas follows the "reasonable probability rule" for future damages for personal injuries. *Vela*, 762 S.W.2d at 321. Pursuant to this rule, Texas courts have consistently held that the award of future medical expenses rests within the sound discretion of the jury. *Id.* The jury can make its determination of the amount of future medical expenses and care based on the injuries suffered, the medical care rendered before trial, the progress toward recovery under the treatment received, and the condition of the injured party at

the time of trial. *Id.; Pride Transport Co., Inc. v. Hughes*, 591 S.W.2d 631, 633 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.). However, to sustain an award of future medical expenses, the plaintiff must present evidence to establish that in all reasonable probability, future medical care will be required and the reasonable cost of that care. *See Vela*, 762 S.W.2d at 322–23 (Cadena, J., dissenting); *Thrailkill v. Montgomery Ward and Co.*, 670 S.W.2d 382, 384 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Keller Industries, Inc. v. Reeves*, 656 S.W.2d 221, 227 (Tex. App.—Austin 1983, writ ref'd n.r.e.); *Thate*, 595 S.W.2d at 601.

Here, in making its award of damages for future medical expenses, the jury had the right to consider: (1) the testimony of Dr. McKeever that Josephine suffered a fractured vertebrae that required immediate hospitalization; (2) the testimony of Kelly Machala that Josephine was required to stay in the hospital for three to four weeks following the accident; (3) the testimony of Kelly Machala, Ronald Machala, and Josephine herself regarding the severe pain Josephine suffered as a result of the accident; (4) the testimony regarding Josephine's medical treatment for the injuries she sustained; (5) the parties' stipulation that Josephine's incurred reasonable and necessary medical expenses of $ 9,596.04; and (6) Josephine's testimony that at the time of trial she continued to suffer back pain.

However, there was no testimony establishing that in all reasonable probability that Josephine would require future medical care and the cost of such care. Absent this testimony, the evidence was legally insufficient to support the jury's award of $10,000 for future medical care and expenses. We sustain appellants' fifth issue presented, reverse the portion of the judgment awarding Josephine damages for future medical expenses, and render judgment that Josephine take nothing on her claim for future medical expenses.

*Future Pain and Mental Anguish*

 Finally, appellants contend the evidence is legally, and, in the alternative factually insufficient to support the jury's award of $50,000 for future pain and mental anguish damages. We disagree.

The appellants, pointing to the testimony of Dr. McKeever and Dr. Southern, contend that any pain or mental anguish that Josephine is suffering is due to her pre-existing conditions and her failure to follow Dr. McKeever's advice. We agree with the appellants' contention that the doctors testified that some of Josephine's pain may be the result of pre-existing conditions. However, Dr. McKeever also testified the Josephine's injuries were caused *solely* by her fall, and that she that was not to blame for her injuries. He also stated that because of her injury, Josephine would suffer pain from the considerable strain on her back when sitting up straight, standing, and walking around. Moreover, as outlined above, Josephine, Kelly Machala, and Ronald Machala testified that as a result of her fall, Josephine is no longer able to participate in many of the activities that she engaged in prior to the accident because of the pain she was suffering.

Matters of pain and suffering are necessarily speculative, and it is within the province of the jury to set the amount of such damages. *Hicks v. Ricardo*, 834 S.W.2d 587, 591 (Tex.App.—Houston [1st Dist.] 1992, no writ). After considering and weighing all the evidence, we find that it is both legally and factually sufficient to support the jury's award of future pain and mental anguish damages.

We overrule appellants' seventh and eighth issues presented.

### Conclusion

We find that the trial court did not err in refusing to submit a comparative responsibility question to the jury in light of the appellant's stipulation and conduct at trial. Additionally, we find that Josephine did plead for physical impairment damages, and, therefore, the trial court did not err in submitting a physical impairment question to the jury. In this regard, we also find that Josephine was not awarded an impermissible double recovery. Finally, we affirm the jury's award of damages for physical impairment and future pain and mental anguish, but reverse the portion of the judgment awarding Josephine $10,000.00 for future medical expenses, and render judgment that Josephine take nothing on her claim for future medical expenses. As so reformed, it is affirmed.