NUMBER 13-03-00407-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

RELIANCE
STEEL & ALUMINUM COMPANY

AND SAMUEL ALVARADO,                                                           Appellants,

 

                                                             v.

 

MICHAEL L. SEVCIK AND CATHY S. LOTH,                                Appellees.

 

     On appeal from the 155th District Court of Waller County,
Texas.

 

                       MEMORANDUM OPINION

 

                  Before Justices Hinojosa, Yañez,
and Garza

                         Memorandum
Opinion by Justice Hinojosa

 








Appellees, Michael L. Sevcik and Cathy S.
Loth, sued appellants, Reliance Steel & Aluminum Company and Samuel
Alvarado,[1] for damages resulting from an automobile
accident.  Following a jury trial, the
trial court signed a judgment in favor of appellees in the amount of
$3,020,000.  In four issues, appellants
contend (1) the evidence is legally and factually insufficient to support the
jury=s findings that Cathy Loth sustained damages
for (a) past and future medical care, (b) future loss of earning capacity, and
(c) future pain and mental anguish; and (2) the trial court erred in admitting
evidence of Reliance Steel=s annual sales.  We modify the trial court=s judgment, and as modified, affirm.

                                                   A.  Factual
Background

On September 24, 1999, Cathy Loth was a
passenger in a pickup truck driven by Michael Sevcik.  The pickup truck was traveling westbound on
Interstate Highway 10 in the right lane of traffic.  At the same time, in the same vicinity,
Samuel Alvarado was driving a Reliance Steel tractor trailer rig, also
westbound on Interstate Highway 10, in the middle lane.  While moving into the right lane of traffic,
Alvarado hit the rear of the pickup truck. 
Sevcik and Loth sued Reliance Steel and Alvarado, claiming Alvarado=s negligence caused the injuries they
sustained from the accident.

                                                     B.  Standard
of Review








In reviewing the legal sufficiency of the
evidence, we view the evidence in the light favorable to the verdict, crediting
favorable evidence if reasonable jurors could, and disregarding contrary
evidence unless reasonable jurors could not. 
City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005).  There is legally insufficient evidence or
"no evidence" of a vital fact when (a) there is a complete absence of
evidence of a vital fact, (b) the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove a vital fact, (c) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (d)
the evidence conclusively establishes the opposite of the vital fact.  Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).  More
than a scintilla of evidence exists when the evidence supporting the finding,
as a whole, "rises to a level that would enable reasonable and fair‑minded
people to differ in their conclusions." 
Id. (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d
497 (Tex. 1995)).  If the evidence is so
weak as to do no more than create a mere surmise or suspicion of its existence,
its legal effect is that it is no evidence. 
Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 183
(Tex. 1995).

In reviewing the factual sufficiency of the
evidence, we consider, weigh, and examine all the evidence presented at
trial.  Plas‑Tex, Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We set aside a finding for factual
insufficiency only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and manifestly unjust.  Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986) (per curiam).

     C.  Sufficiency
of Evidence of Past and Future Medical Expenses

                                                       1.  Past Medical Expenses

In their first issue, appellants contend the
evidence is legally and factually insufficient to support the jury=s finding that Loth incurred past medical
expenses of $40,000.00.








To recover for past medical expenses, a
plaintiff must prove the actual amount of the expenses incurred and that those
expenses were reasonable and necessary.  See
Doctor v. Pardue, 178 S.W.3d 355, 371-72 (Tex. App.BHouston [1st Dist.] 2005, no pet.); Monsanto
Co. v. Johnson, 675 S.W.2d 305, 312 (Tex. App.BHouston [1st Dist.] 1984, writ ref'd
n.r.e.).  A plaintiff can prove
reasonableness and necessity of past medical expenses by either (1) presenting
expert testimony on the issues of reasonableness and necessity, or (2)
presenting an affidavit prepared and filed in compliance with section 18.001 of
the Texas Civil Practice and Remedies Code. 
See Doctor, 178 S.W.3d at 372; Walker v. Ricks, 101 S.W.3d
740, 746‑47 (Tex. App.BCorpus Christi 2003, no pet.).

At trial, Loth introduced an exhibit into
evidence that her costs for past medical treatment totaled $33,985.23, not
$40,000.  Appellees argue that the jury=s damage award is supported by the record
because the jury heard evidence that Loth incurred other medical expenses that
were not included in the exhibit.  They
assert the exhibit does not include (1) any of the charges by Ralph Lilly, M.D.
for his consultation and treatment of Loth; (2) the cost of care provided by
Larry Pollock, Ph.D. for testing and evaluating Loth; and (3) at least two
visits to Loth=s psychologist, Laurel Graham.  However, the record is devoid of any
testimony or affidavits regarding the reasonableness and necessity of these
expenses.  See Doctor, 178 S.W.3d
at 371-72.  Accordingly, we hold the
evidence is legally and factually sufficient to support a finding for past
medical expenses of only $33,985.23.

                                                     2.  Future Medical Expenses

In their first issue, appellants also
contend the evidence is legally and factually insufficient to support the jury=s finding that Loth incurred future medical
expenses of $250,000.








Texas follows the "reasonable
probability" rule for future damages arising from personal injuries.  Rosenboom Mach. & Tool, Inc. v.
Machala, 995 S.W.2d 817, 828 (Tex. App.BHouston [1st Dist.] 1999, pet. denied); City
of San Antonio v. Vela, 762 S.W.2d 314, 321 (Tex. App.BSan Antonio 1988, writ denied).   To recover for future medical expenses, a
plaintiff must show there is a reasonable probability that such medical
expenses will be incurred in the future. 
Rosenboom, 995 S.W.2d at 828; Whole Foods Mkt. Southwest v.
Tijerina, 979 S.W.2d 768, 781 (Tex. App.BHouston [14th Dist.] 1998, pet. denied).  The preferred practice for establishing
future medical costs is through expert medical testimony, but there is no
requirement that a plaintiff establish such costs in that manner.  Tijerina, 979 S.W.2d at 781.  Because no precise evidence is required, the
jury may award damages for future medical care based on the nature of the
injury, the medical care received prior to trial, and the condition of the
injured party at the time of trial.  Id.;
Vela, 762 S.W.2d at 321.

It is within the jury's sound discretion to
determine what amount, if any, to award in future medical expenses.  Rosenboom, 995 S.W.2d at 828; Tijerina,
979 S.W.2d at 781.  Issues such as life
expectancy, medical advances, and the future costs of products and services
are, by their very nature, uncertain, and therefore, appellate courts are
particularly reluctant to disturb a jury's award of these damages.   Brownsville Pediatric Ass'n v. Reyes, 68
S.W.3d 184, 191 (Tex. App.BCorpus Christi 2002, no pet.).  However, this standard of review is "not
so nebulous that a reviewing court will uphold a jury award for future medical
expenses when there is no evidence." 
Harvey v. Culpepper, 801 S.W.2d 596, 599 (Tex. App.BCorpus Christi 1990, no writ).








Dr. Lilly, Loth=s treating physician, testified that Loth
sustained a closed head injury sufficient to cause traumatic brain injury as a
result of the collision.  He said that
Loth sustained injuries to the frontal lobe and cerebellum.  This injury has caused Loth to experience
impaired concentration, change in personality, significant depression,
traumatic headaches, and neck pain.  Dr.
Lilly has recommended and prescribed central nervous system stimulants to deal
with concentration and attention, anti-epileptic medicine, and
antidepressants.  Loth testified that she
spends at least $137 per month on her medications.  Dr. Lilly further testified that Loth=s brain injury has caused a permanent
deficit that Loth will have to deal with for the rest of her life.  He recommended that she continue with
neurological care and on-going therapeutic follow-up.

Dr. Pollock, a neuropsychologist, testified
that Loth had a number of areas of normal and intact functioning that were not
affected by her injury, but several important areas of functioning showed
serious problems B the most serious being the area of verbal
memory.  He said that the impairments in
Loth=s memory and executive functioning are
permanent.  Dr. Pollock also testified
that Loth would benefit from a rehabilitation program called Project
ReEntry.  He said the program costs
approximately $3,000 per week, and he felt she could accomplish her maximum
benefit from the program in about six months. 
The program is located in Houston, which would require Loth to relocate
during that six-month period.  Loth
testified that relocating to Houston would cost her approximately $1,800 to
$2,000 per month in living expenses, and in addition, she would need to obtain
child care during this time.








Having viewed the evidence in the light most
favorable to Loth, and crediting all evidence reasonable jurors could believe
and disregarding all contrary evidence except that which jurors could not
ignore, we hold the evidence is legally sufficient to support the jury=s finding for future medical expenses.  Furthermore, having weighed all the evidence,
we cannot conclude that the award is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and manifestly unjust.  Accordingly, we hold the evidence is
factually sufficient to support the jury=s finding for future medical expenses.  Appellants= first issue is overruled.

        D.  Sufficiency
of Evidence of Future Loss of Earning Capacity

In their third issue, appellants contend the
evidence is legally and factually insufficient to support the jury=s finding that Loth incurred future loss of
earning capacity  in the amount of
$750,000.

Loss of future earning capacity is the
plaintiff=s diminished capacity to earn a living after
the trial.  Tagle v. Galvan, 155
S.W.3d 510, 519 (Tex. App.BSan Antonio 2004, no pet.); Strauss v.
Cont=l Airlines, Inc., 67 S.W.3d 428, 435 (Tex. App.BHouston [14th Dist.] 2002, no pet.).  Recovery for loss of earning capacity is not
based on the actual earnings lost, but on the loss of capacity to earn
money.  Strauss, 67 S.W.3d at 435.








To support a finding of damages for loss of
future earning capacity, a plaintiff must introduce evidence sufficient to
allow the jury to reasonably measure earning capacity in monetary terms.  Bonney v. San Antonio Transit Co., 325
S.W.2d 117, 121 (Tex. 1959); Tagle, 155 S.W.3d at 519; Strauss,
67 S.W.3d at 435.  In support, a
plaintiff can introduce evidence of past earnings; the plaintiff=s stamina, efficiency, and ability to work
with pain; the weaknesses and degenerative changes that will naturally result
from the injury; the plaintiff=s work-life expectancy; and the plaintiff=s age, health, and general physical
condition.  Tagle, 155 S.W.3d at
519; Plainview Motels, Inc. v. Reynolds, 127 S.W.3d 21, 36 (Tex. App.BTyler 2003, no pet.).  There must be some evidence that the
plaintiff had the capacity to work prior to the injury, and that her capacity
was impaired as a result of the injury.  Tagle,
155 S.W.3d at 520; Reynolds, 127 S.W.3d at 36.  In determining what evidence is sufficient to
support a finding for loss of earning capacity, no general rule can be laid
down, except that each case must be judged upon its peculiar facts and the
damages are proved to the degree of certainty to which the case is
susceptible.  Strauss, 67 S.W.3d
at 436.

Because the amount of money a plaintiff
might earn in the future is always uncertain, the jury has considerable
discretion in determining the amount.  Tagle,
155 S.W.3d at 519.  However, a jury
should not be left to mere conjecture when facts appear to be available upon
which the jury could base an intelligent answer.  Strauss, 67 S.W.3d at 435 (citing Bonney,
325 S.W.2d at 121).

Appellants assume that the jury based its
finding of $750,000 on Loth=s testimony that she made $630 one week in
the early 1990s, multiplied by 52 weeks per year for 23 years, her work-life
expectancy.  Appellants argue that the
evidence is insufficient to support such a finding.  We disagree.








Loth testified that she began sewing as a
child.  In the early 1990s she became a Ahome stitcher@ for D&D Western Wear.  At trial, she testified that during that time
she was making up to $630 per week. 
Because she enjoyed creating her own original designs and felt she could
make more money in her own business, Loth testified that she had begun to
create her own business, Rockin= C Originals.  She introduced into evidence a sketchbook of
original western wear, which she designed and priced.  She testified that she had contacted several Ahigh-end@ western stores in Austin and Houston that
were interested in her designs, and some of her pieces were sold in these
stores.  One particular piece she sold
for $250.  She was in the process of
developing her business prior to her husband=s death in 1998.  After his death, Loth designed a new house
and began construction, just prior to the collision, which included a sewing
room for her business.

Several witnesses testified regarding her
talents and capabilities prior to the accident. 
However, the effects of her injury have severely diminished her capacity
to sew for a living.  Testimony indicated
that Loth suffers from memory loss, concentration problems, attention problems,
and difficulty completing tasks, all of which have had a significant impact on
her sewing projects.  Loth testified that
a project that once took only forty-five minutes to complete now takes her more
than four hours to complete.  Dr. Pollock
testified he did not feel that Loth could have any meaningful employment.  He said that while she may be able to make
some garments, she is not capable of earning a living at it.

Having viewed the evidence in the light most
favorable to Loth, and crediting all evidence reasonable jurors could believe
and disregarding all contrary evidence except that which jurors could not
ignore, we hold the evidence is legally sufficient to support the jury=s finding that Loth incurred future loss of
earning capacity in the amount of $750,000. 
Furthermore, having weighed all the evidence, we cannot conclude that
the finding is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and manifestly unjust. 
Accordingly, we hold the evidence is factually sufficient to support the
jury=s finding of future loss of earning
capacity.  Appellant=s third issue is overruled.

         D.  Sufficiency
of Evidence of Future Pain and Mental Anguish








Question 2b of the jury charge asked the
jury to find the amount of damages for any physical pain and mental anguish
that Loth would sustain in the future. 
The jury found the amount of damages for physical pain and mental
anguish to be $ 1,500,000.  In their
fourth issue, appellants contend the evidence is legally and factually
insufficient to support the jury=s finding.

Damages for physical and mental injuries are
separate and distinct.  Sunbridge
Healthcare Corp. v. Penny, 160 S.W.3d 230, 248 (Tex. App.BTexarkana 2005, no pet.); Southwest Tex.
Coors, Inc. v. Morales, 948 S.W.2d 948, 954 (Tex. App.B San Antonio 1997, no writ) (Green, J.,
concurring).  When a damage issue is
submitted in broad form, ascertaining the amount the jury awarded for each
element of damages is difficult, if not impossible.  Penny, 160 S.W.3d at 248; see Wal‑Mart
Stores, Inc. v. Garcia, 30 S.W.3d 19, 24 (Tex. App.BSan Antonio 2000, no pet.); Brookshire
Bros. v. Lewis, 997 S.W.2d 908, 921‑22 (Tex. App.BBeaumont 1999, pet. denied).  Therefore, an appellant who seeks to
challenge a multi‑element damage award on appeal must address each
element and show the evidence is insufficient to support the entire award.  Penny, 160 S.W.3d at 248; see
Garcia, 30 S.W.3d at 24; Lewis, 997 S.W.2d at 922.  If an appellant fails to address an element
of damages, the appellant waives the sufficiency challenge.  Penny, 160 S.W.3d at 248; see
Garcia, 30 S.W.3d at 24; Lewis, 997 S.W.2d at 922.

Here, appellants failed to address the
physical pain element of the jury=s finding. 
Because appellant=s brief merely focused on the mental anguish
element, and failed to provide any authority or argument regarding the physical
pain element, we conclude appellants waived their right to complain about the
sufficiency of the jury=s finding. 
See Tex. R. App. P. 33.1.  Appellants= fourth issue is overruled.

                                               E.  Evidence
of Gross Sales








In their second issue, appellants contend
the trial court erred in admitting evidence of Reliance Steel=s annual sales.

We review a trial court's decision to admit
or exclude evidence for an abuse of discretion. Owens‑Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  Testimony concerning the wealth or poverty of
a party is ordinarily inadmissible in a civil case.  Cooke v. Dykstra, 800 S.W.2d 556, 562
(Tex. App.BHouston [14th Dist.] 1990, no writ).  We will not reverse a trial court for an
erroneous evidentiary ruling unless the error probably caused the rendition of
an improper judgment.  Tex. R. App. 
P. 44.1; Malone, 972 S.W.2d at 43.  Appropriate inquiries include the length of
the allegedly improper argument, whether it was repeated or abandoned and, in
an evaluation of the whole case, the argument's probable effect on a material finding.  Standard Fire Ins. Co. v. Reese, 584
S.W.2d 835, 839‑40 (Tex. 1979); Crown Plumbing, Inc. v. Petrozak,
751 S.W.2d 936, 940 (Tex. App.BHouston [14th Dist.] 1988, writ denied).  The complainant must show that the
probability that the argument caused harm is greater than the probability that
the verdict was grounded on proper proceedings and evidence.  Petrozak, 751 S.W.2d at 941; Reese,
584 S.W.2d at 840.








Prior to the reading of the deposition
testimony of Robert Balez, the corporate representative of Reliance Steel,
appellants objected to the admissibility of his testimony as irrelevant.  Appellees argued it was relevant because the
testimony showed that Reliance Steel was not a Amom and pop@ operation and included the number of hours
its drivers were on the road per day. 
The trial court overruled appellants= objection. 
Balez=s testimony regarding the size of Reliance
Steel, its corporate structure, the number of employees, and its locations, was
read into evidence.   Appellants complain
of the following testimony:

Q:        How big a company is Reliance?

 

A:        I believe last year=s annual sales approximated $1.9 billion.

 

Absent this single statement, the record is
devoid of any other reference to Reliance Steel=s financial status.  The annual sales of Reliance Steel was not
referred to at any other stage of the trial by any witness or trial
counsel.  It was never repeated nor
argued.

Having reviewed the evidence supporting the
jury=s verdict, even if the trial court erred in
admitting this evidence, we cannot conclude that this one statement lead to the
rendition of an improper verdict.  See
Malone, 972 S.W.2d at 43.  Appellants= second issue is overruled.

                                                              F.  Conclusion

We have held that the evidence is legally
and factually sufficient to support a finding only of $33,985.23 for Loth=s past medical expenses.  Accordingly, we modify the trial court=s judgment to reflect that Loth is granted
judgment for past medical expenses only in the amount of $33,985.23.  As modified, the trial court=s judgment is affirmed.         

 

FEDERICO G. HINOJOSA

Justice

 

 

Memorandum Opinion delivered and filed this

the 9th day of March, 2006.











[1] Prior to closing
arguments, the parties stipulated that Alvarado was an employee of Reliance
Steel at the time of the accident and that he was in the course and scope of
his employment; therefore, the doctrine of respondeat superior would apply and
vicarious responsibility for the employee=s conduct would be attributed to Reliance Steel.