Juan Antonio LOZANO, Sr.,
et al., Appellants,

v.

Deana Ann LOZANO, Appellee.

No. 14–96–01555–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 19, 1998.

Rehearing Overruled Dec. 23, 1998.

Ronald J. Restrepo, Paul J. McConnell, III, Ben A. Baring, Jr., Houston, for appellants.

Reba A. Eichelberger, Baytown, for appellee.

Before Justices LEE, ANDERSON, and O'NEILL.

## OPINION

JOHN S. ANDERSON, Justice.

Appellants, Juan Lozano, Sr., Blanca Lozano, Monica Lozano, Eduardo "Alex" Lozano, and Sandra Lozano Warner, appeal from an adverse jury verdict finding them liable for interference with the possessory rights[1] of appellee, Deana Warner ("Deana"), and for defamation. In five points of error, appellants contend there was no evidence or, alternatively, insufficient evidence, to support the jury's findings (1) that any appellant aided or assisted Junior Lozano in concealing a child; (2) that any appellant acted with malice; (3) of a causal link between their conduct and Deana's inability to secure possession of her child; (4) of damages; and (5) of defamation. We reverse and render in part and affirm in part.

### Background

Juan Antonio Lozano, Jr. ("Junior") is the son of appellants, Juan Antonio Lozano Sr. ("Juan, Sr.") and Blanca Lozano ("Blanca"). Appellants Alex Lozano, Monica Lozano, and Sandra Warner are Junior's brother and sisters. Deana married Junior in July of 1993, and they had a daughter, Bianca, the following month. After Deana allegedly suffered abuse at Junior's hands, she and Junior separated. Several months later, a court temporarily awarded Deana custody of Bianca and

---

1. Juan Lozano and his daughter disappeared during early April, 1995. Before April 20, 1995, when the law changed, Texas Family Code Section 36.02(a) provided:

  A person who takes or retains possession of a child or who conceals the whereabouts of a child in violation of a court order that provides for possessory interests in a child may be liable for damages to the person who is denied a possessory interest in the child.

Prior to April 20, 1995, Section 36.02(c) provided:

  Each person who aids or assists in conduct for which a cause of action is authorized under Subsection (a) of this section is jointly and severally liable for damages.

Title 2 of the Family Code, which included Chapter 36, was repealed effective April 20, 1995. The Family Code was recodified by reenacting Title 2 effective April 20, 1995. *See* Act of September 1, 1983, 67th Leg., R.S., ch. 328, § 1, 1983 Tex. Gen. Laws 1725, 1726 (repealed 1995) (current version at TEX. FAM.CODE ANN. § § 42.002, 42.003 (Vernon 1996)).

gave Junior visitation rights. On April 7, 1993, Junior picked up Bianca for scheduled visitation, and he failed to return her on April 9th. Deana and various authorities launched a massive effort to locate Bianca. They placed thousands of posters around Baytown, where Junior lived and was last seen; however, Bianca and Junior were never located.

## Standards of Review for Factual and Legal Sufficiency Challenges to the Evidence

We review a no evidence point of error by viewing the evidence in a light tending to support the finding of a disputed fact and disregarding all inferences to the contrary. *See Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). We determine whether some evidence supports the fact in issue. *Id.* If there is any evidence of probative force supporting the finding, the no evidence challenge must fail. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). Any more than a scintilla of evidence suffices to support a jury finding. *Id.* If the evidence is so weak as to create no more than mere surmise or suspicion of the existence of the finding, however, there is no evidence to support the finding. *See Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 838 (Tex.1997); *Texas Indus., Inc. v. Vaughan,* 919 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Circumstantial evidence can support a jury finding so long as it rises above mere suspicion. *See Convalescent Servs., Inc. v. Schultz,* 921 S.W.2d 731, 734 (Tex.App.—Houston [14th Dist.] 1996, writ denied). However, if the plaintiff relies on circumstantial evidence, and the circumstances are equally consistent with either of two facts, no more than a scintilla supports a jury finding, and the no evidence point must be sustained. *See Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex. 1996). Furthermore, a vital fact may not be established by stacking inference upon inference. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968); *Engstrom v. First Nat.*

*Bank,* 936 S.W.2d 438, 445 (Tex.App.—Houston [14th Dist.] 1997, writ denied.)

If there is some evidence supporting the finding, we then review the insufficiency of the evidence claim. Under this standard, we will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998); *Russell,* 949 S.W.2d at 490. We make this determination by examining the entire record, considering and weighing all the evidence, both in support of, and contrary to, the challenged findings. *See Maritime Overseas,* 971 S.W.2d at 407. We may not, however, pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact. *See id.; Tigner v. City of Angleton,* 949 S.W.2d 887, 889 (Tex.App.—Houston [14th Dist.] 1997, no writ).

### Jury Questions Two and Four

■ In their first and second points of error, appellants contend there is no evidence, or alternatively, insufficient evidence to support the jury's answers as to Questions Two and Four. Question Two asked jurors whether appellants aided or assisted Junior in taking or retaining possession of Bianca or in concealing her whereabouts in violation of Deana's right of possession. An instruction stated that appellants are liable for aiding and abetting Junior in taking or retaining or concealing Bianca only if (1) Junior violated a court order granting Deana possession; and (2) the appellants knew their actions would aid or assist Junior in violating the court order. Question Four asked whether appellants acted with malice in interfering with Deana's right of possession.

■ To establish the liability of a person who aids or assists an abductor, the plaintiff must establish the non-abductor (1) aided or assisted the abductor in either taking, retaining, or concealing the child, and (2) had actual notice or reasonable cause to believe a court order existed affecting the custodial rights.[2] *See Weirich,* 833 S.W.2d at 945. Few cases in Texas, or any other jurisdiction,

---

2. On appeal, appellants do not contest their actual notice of the court order.

have addressed a non-abductor's interference with custody rights. In Texas, the principal case is *Weirich*, in which the defendant grandmother asserted that no evidence supported the verdict. In *Weirich*, the plaintiff-mother obtained a temporary restraining order precluding her husband from interfering with her custody, but he abducted their two children three days later. *See* 833 S.W.2d at 943. He took the children to stay with the defendant, his mother, on her farm. Despite a telephone call from the plaintiff requesting information, the defendant did not call the plaintiff to inform her that the children and their father were at her farm. Furthermore, the defendant bought the children new clothes. *Id.* The children were recovered soon thereafter, and a court appointed the plaintiff temporary managing conservator. Less than two weeks later, the defendant co-signed a bank note loaning her son $4000. She also loaned him her truck, which he used to remove the children's items from the plaintiff's house. These items were stored in the defendant's barn. *Id.* at 943–44. The defendant's son again abducted the children and took them to the defendant's home, whereupon the defendant drove the group to the airport. The defendant told the plaintiff that her son took the children camping. *Id.* at 944. The court found this constituted some evidence the defendant aided and assisted her son in taking, retaining, or concealing the children. *Id.* at 945–46.

In *Smith v. Smith*, 720 S.W.2d 586 (Tex. App.—Houston [1 st Dist.] 1986, no writ), the court considered whether sufficient evidence supported a jury finding that the defendants aided or assisted the abductor, who apparently was related to each defendant, in taking or retaining possession of his children or in concealing their whereabouts. *See id.* at 596–97. The court listed the myriad evidence supporting the jury finding, including evidence that one defendant was present when the abductor took the children from their mother, certain defendants met with the abductor in Europe following the abduction, one appellant charged a rental car and hotel room in Europe for the use of the abductor and certain other defendants, certain defendants stated that they would spend all their money to win custody of the children, and the abductor did not have the financial ability to support himself. *Id.* The court held this evidence was sufficient to support the jury's findings. *Id.* at 597.

*Weirich* and *Smith* are the only published Texas cases addressing a non-abductor's liability for interfering with custody rights. In each of these cases, the defendants both knew of the children's whereabouts and took affirmative measures to ensure the continuation of the abduction. In the present case, no direct evidence exists as to either circumstance. In order to overrule appellants' no evidence point of error, we must find that the inference of appellants' knowledge drawn from that circumstantial evidence is more reasonable than the lack of knowledge inference proposed by appellants. *See Cazarez*, 937 S.W.2d at 450.

◼ Deana relies on the following evidence of financial support to uphold the jury finding: (1) Juan, Sr. and Sandra admitted they gave Junior money before the abduction; (2) appellants acknowledged that Juan, Jr. had no money, no job, and no car around the time of the abduction;[3] (3) Sandra wrote a $1000 check to Junior a few weeks before Junior's birthday, and the check was not cashed until the day after Junior was to return Bianca; (4) Sandra never gave Junior such a large check for previous birthdays; (5) Juan, Sr. gave Alex financial assistance; (6) Juan, Sr., Monica, and Sandra did not comply with discovery requests for financial information. At best, this evidence shows appellants were aware Junior was having financial difficulties before the abduction and

---

**3.** Deana's references to the record are inaccurate. Alex testified that Junior did not have a car, but he did not know if Junior had a job. Blanca testified Junior had a job at the time of the abduction and that all of her children have their own money. Juan, Sr. testified that Junior did not have a car at the time. Monica did not testify regarding these matters. Warner testified that Junior had a job around the time of the abduction but that he was in "financial straits" at that time. Deana admitted that Junior told her he had a job; however, she subsequently testified that he had no job. This was the only evidence that Junior was unemployed at the time of the abduction.

that they provided monetary assistance. Nonetheless, Deana has not cited, and we have not found, any evidence that appellants knew the financial assistance, if any, would aid or assist Junior in violating the custody order. Therefore, any inference that the above evidence establishes appellants' knowledge is unreasonable. "Vital facts may not be proved by unreasonable inferences from other facts and circumstances." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex.1968). Rather, an inference must be reasonably and logically drawn from the evidence. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex.1997).

Deana also offers appellants' interrogatory answers as support for the jury's finding. Each appellant was asked in interrogatories: "Have you or anyone in your family furnished financial assistance in any form to (a) Juan Antonio Lozano, Jr.? (b) Bianca Isabella Lozano?" Each objected to the definition of "financial assistance" as being overly broad and indicated that, for the purpose of answering the interrogatories, "financial assistance" meant assistance since April 9, 1995. They answered the interrogatory by responding, "NO, see above definition of 'financial assistance.'" Deana's brief interprets these responses as admissions that appellants furnished financial assistance to Junior until the date of the abduction. Even if this were a logical interpretation, this evidence only shows appellants provided financial assistance *until* the date of the abduction; it does not show they supplied it *after* that time. Similarly, it does not show appellants knew or had reasonable cause to believe their financial assistance prior to the abduction would aid or assist Junior in violating the court order. Deana also points to appellants' answers to requests for admissions as evidence upon which the jurors relied in finding that appellants assisted Junior in abducting Bianca. Each appellant, however, specifically denied providing financial assistance to Junior from April 1, 1995, to June 1, 1995, the time frame specified in the requests for admissions. This too is no evidence of appellants' knowledge Junior would violate the court order.

Deana relies heavily on appellants' invocation of the Fifth Amendment in response to discovery requests and Juan, Sr.'s invocation of the privilege at his deposition in response to a question regarding Junior's whereabouts. A jury may draw an adverse inference against a party who pleads the Fifth Amendment. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Texas Dep't of Public Safety Officers Ass'n v. Denton*, 897 S.W.2d 757 (Tex.1995). "Refusal to answer questions by asserting the privilege is relevant evidence from which the finder of fact in a civil action may draw whatever inference is reasonable under the circumstances." *Id.* We reiterate, however, that if evidence gives rise to two equally consistent inferences so that neither inference is more probable than the other, neither inference can be made. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex.1995). Appellants testified that they asserted the privilege based on the advice of their counsel. Furthermore, appellants changed attorneys subsequent to the date they answered the interrogatories, and they then answered the previously unanswered interrogatories. Juan, Sr. testified that he invoked the Fifth Amendment upon the advice of his attorney, who, at the time of the deposition, did not know whether Juan, Sr. knew of Junior's whereabouts. Appellants' explanations give rise to inferences which are equally consistent with the proposition that they (1) delayed giving answers as to Junior's whereabouts based solely on the advice of counsel, or (2) refused to answer discovery requests in order to delay Deana's search. Since neither of these inferences is more probable than the other, any inference the jury drew was improper, and the finding on which it was based was not supported by the evidence.

The remainder of Deana's evidence does nothing more than give rise to mere surmise and speculation. Although Blanca's unwillingness to talk to Deana or call Deana regarding Bianca's missing items the night Bianca was to be returned could indicate she was trying to delay or prevent Deana from finding Bianca and Junior, it could just as easily indicate, and indeed the record supports, that a great deal of animosity exists

between Blanca and Deana. Similar inferences can be drawn from the evidence that Warner failed to call Deana back for two days after Deana called her for information on Junior's whereabouts and that Blanca and Warner each publicly stated that Bianca was abused.

In passing, Deana refers to evidence that Blanca, Alex, and Monica each took down a poster requesting information on Junior's and Bianca's whereabouts. This evidence gives rise to equal inferences that appellants intended to limit public information regarding the abduction or that they took down those posters because each contained their address, causing people to drive by their house and harass them.

In summary, Deana's circumstantial evidence allows a number of inferences indicating appellants delayed Deana's search and financed Junior's escape; however, the same circumstantial evidence gives rise to an inference that appellants had no knowledge of Junior's plan and did not assist him in the abduction. Because neither inference is more probable than the other, neither can be drawn. *See Transport Ins. Co.*, 898 S.W.2d at 278. Although numerous pieces of circumstantial evidence give rise to inferences supporting the jury's answers to Question Two, "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *Transport Ins. Co.*, 898 S.W.2d at 278 (quoting *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex.1993)). Here, appellee has not directed our attention to any direct evidence establishing that appellants knew their actions would assist Junior in violating the court order.

Although Deana's loss is acutely tragic, and the actions of her ex-husband are indeed heinous, the record does not contain even a scintilla of evidence to support the jury's finding as to Question Two. We sustain appellants' first point of error. Because of our disposition of appellants' first point of error, we need not consider their second point regarding malice or their third and fourth points regarding causation and damages.

4. Warner submitted a separate appellate brief.

## Defamation

In their fifth and final points [4] of error, appellants contend there was no evidence or, alternatively, legally insufficient evidence to support the jury's defamation finding against Warner and Blanca. We review their contentions separately.

### Sandra Warner

Question Six of the jury charge asked jurors whether Warner made defamatory remarks about Deana at Dr. Davis's office in June of 1995. The jurors found she had and awarded Deana $1000.

The evidence supporting the jury finding was the testimony of Deborah Mullen and Joyce Smith. Both women are employed by Dr. Anthony Davis. They testified that Warner and Blanca came to Davis's office and asked them to take down posters regarding Bianca's disappearance. When Mullen and Smith refused, either Blanca or Warner asked whether they would change their mind if they knew the child's mother abused the child.

Warner asserts that neither Mullen nor Smith believed the statement or attributed it to her. She also argues that because the speaker referred to the "baby's mother," the person allegedly defamed was not ascertained or ascertainable.

We find no merit in Warner's contention that neither woman accused her of making the statement. Although neither Mullen nor Smith specified whether Warner or Blanca made the child abuse remark, Mullen testified that Warner and Lozano came into Davis's office and stated that administration sent them to have the posters removed. Mullen testified, "Of course, I refused; and they said—I'm trying to recall as it went. It more or less was just: Why do we have the posters up; will we take them down. We said, 'no.' Would it change our opinion if we knew that the baby had been abused by its mother? ... Mrs. Lozano—what did she say? The only thing that I really heard from Mrs. Lozano was that they had tried [to file child abuse charges], and the District Attorney would not accept charges from them."

Because Mullen testified that "they"—either Warner or Blanca—made the child abuse remark, and further, that Blanca only discussed filing charges with the District Attorney, a reasonable jury could conclude Warner made the statement about child abuse.

Second, Warner argues neither witness believed the allegation, and it did not change their opinion of Deana. Consequently, she contends the statement was not published because no one understood it to be defamatory.

▮ A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997); *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex.1994). Slander is a defamatory statement orally published to a third party without explanation or excuse. *See Cain*, 878 S.W.2d at 580. A slanderous remark is published if it is orally communicated to a third person capable of understanding its defamatory meaning and in such a way that the person did understand its defamatory meaning. *See AccuBanc Mortgage Corp. v. Drummonds*, 938 S.W.2d 135, 147 (Tex. App.—Fort Worth 1996, writ denied).

▮ Warner's remark was defamatory *per se.* A statement is defamatory *per se* if it falsely imputes a crime to the complaining party. *See Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex.App.—Corpus Christi 1997, writ denied). Child abuse is a crime under Texas law. *See* TEX. PENAL CODE ANN. § 22.04 (Vernon 1994). When a plaintiff establishes a remark is defamatory *per se,* proof of damages is presumed. *See Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 91 (Corpus Christi—1992, writ dism'd w.o.j.). Hence, proof of actual injury to Deana's reputation is unnecessary, and Mullen's and Smith's disbelief of the statement is irrelevant.

▮ Finally, we consider Warner's argument that Deana was neither ascertained nor ascertainable from the statement. A person need not be expressly mentioned in a slanderous remark to be liable for slander. *See, e.g., Sellards v. Express-News Corp.*, 702 S.W.2d 677, 680 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). Mullen testified that when the statement was made, she felt Warner and Blanca were accusing Deana of child abuse. Smith testified that she understood that Warner and Bianca were saying that the "mother of the child" was guilty of the crime of child abuse, and she knew Deana to be the child's mother. Therefore, Deana was readily ascertainable.

Some evidence supports each element of the defamation claim. Warner's no evidence point is overruled. We now consider whether sufficient evidence supports the claim.

Warner testified that she went to Davis's office to discuss posters indicating her parents' address. She asked for the doctor, and when she was told he was busy, she asked for the office manager. When asked whether she said Deana abused Bianca, Warner replied, "I don't remember exactly what I said, but I do not believe I said that." When she was asked whether she had said anything about Deana in the conversation, Warner answered that she may have, but she did not recall. In light of Mullen's and Smith's testimony, the jury finding was not so against the overwhelming weight of the evidence as to be clearly wrong and unjust.

We overrule Warner's fifth point of error.

### Blanca Lozano

▮ Question Seven of the jury charge asked jurors whether Blanca made defamatory statements about Deana at Cal Evan's inspection station in June or July of 1995. The jurors found she had and awarded Deana $1000.

Cal Evans testified that Blanca and Alex came into his inspection station, and he approached them, thinking they wanted a vehicle inspection. Blanca reached up and took down a poster, stating that her son was on the poster and that she did not want her son's picture up in a public place. Evans responded that he did not want people tearing things down, and Blanca told him that "if [he] knew the truth, [he] would not be helping her." Evans testified Blanca did not tell him all the truth, "she just told me that I did not know about the child abuse." After telling Evans that he would be hearing from their attorney, Blanca and Alex left.

Like Warner, Blanca argues the statement did not refer to a person who was ascer-

tained or readily ascertainable. As noted above, a slanderous remark need not specifically refer to the complaining party. *See Sellards*, 702 S.W.2d at 680. Blanca, however, only accused "her" of child abuse. Evans gave no testimony that he knew who "her" referred to or that he understood the remark to refer to Deana. In fact, his only testimony regarding Deana was that he knew her vaguely.

Without evidence linking Deana to the allegation of child abuse, she cannot recover for defamation against Blanca. We sustain Blanca's fifth point of error.

We modify the judgment to render judgment for all appellants as to Deana's claims of intentional interference with custody rights. We also modify the judgment to render judgment for appellant Blanca Lozano as to Deana's defamation claim. We affirm the trial court's judgment as to Deana's defamation claim against Warner.

LEE, Justice, dissenting.

Because I believe Deana offered legally and factually sufficient evidence to support the jury's findings, I respectfully dissent.

I agree with the majority that circumstantial evidence is no more than a scintilla of evidence if it gives rise to two equally consistent inferences and neither inference is more probable than the other. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995). When the factfinder has before it conflicting evidence, however, it may resolve inconsistencies, believing all or any part of the testimony of any witness and disregarding all or any part of any witness's testimony. *See Twyman v. Twyman*, 855 S.W.2d 619, 623 (Tex.1993).

Although there are different inferences which may be drawn from the evidence in this case, I do not believe they are *equally* consistent. Primarily, I disagree with the majority's analysis regarding Blanca, Eduardo, and Monica taking down posters, which appellants testified was done to avoid embarrassment. The majority asserts appellants' explanation is just as reasonable as the inference they took them down to delay Deana. Considering in isolation the evidence that appellants removed three of thousands of posters, each of which contained their home address, appellants' explanation seems plausible, but in light of other evidence, it is not believable. First, when Blanca took down a poster, she simultaneously told Cal Evans that the poster was of her son, and that she did not want his picture up in a public place. Further, she told him he would not help "her," presumably Deana, if he knew the truth and explained that he did not know about the child abuse. The jury also heard Warner's deposition testimony, used for impeachment as a prior inconsistent statement, in which Warner testified that Blanca told her she was taking down a poster because Blanca did not appreciate her son being cast in "that role." In addition, Eduardo admitted he told people at school that Junior took Bianca because she was abused. Finally, Blanca, Eduardo, and Monica each pleaded the Fifth Amendment in response to certain interrogatories, and Blanca invoked the Fifth Amendment at her deposition. All three refused to answer an interrogatory requesting plans to leave Texas as being speculative and having an improper time frame, but they left for Cancun, Mexico two days after filing this response.

Evidence casting doubt on an inference supporting one party's position may make that inference less reasonable than an inference supporting the opposing party's position. *See, e.g., $9,050.00 in U.S. Currency v. State*, 874 S.W.2d 158, 162 (Tex.App.—Houston [14 th Dist.] 1994, writ denied). I seriously question Blanca's, Eduardo's, and Monica's motivation in tearing down posters in light of the above evidence, and, in fact, the evidence contradicts their stated explanation for doing so. As such, I think the inference that they tore down posters to avoid harassment is less reasonable than the inference that they did so to delay Deana and allows the jury to draw an inference in support of Deana's position.

Furthermore, I do not believe the jury's findings were based on "inference stacking," which occurs when a jury draws an inference from circumstantial evidence and then, from that inference, draws another inference. Such "piling of inferences" is different than a cumulation of circumstantial evidence pointing toward a logical conclusion. *See $9,050.00 in U.S. Currency*, 874 S.W.2d at 162. The first is no evidence, *Schlumberger*

*Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968); the second is not prohibited. In reviewing circumstantial evidence, we must look at the totality of the circumstances rather than considering each piece of evidence in isolation. *See Felker v. Petrolon, Inc.,* 929 S.W.2d 460, 464 (Tex.App.—Houston [1 st Dist.] 1996, writ denied). Here, the jury was not *required* to infer that appellants knew their actions would assist Junior from another inference arising from circumstantial evidence; rather, that inference can be drawn *directly* from the circumstantial evidence, and it is therefore competent evidence and is more than a scintilla of evidence. *See, e.g., Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 591 (Tex.App.—Texarkana 1992, writ denied).

In conclusion, I would find that Deana presented sufficient proof that appellants Blanca, Eduardo, and Monica knew their actions would aid or assist Junior in Bianca's abduction. Therefore, I would overrule appellants' first and second points of error as to these appellants and affirm the trial court's judgment regarding interference with Deana's possessory rights.