Reversed and Remanded and Memorandum Opinion on Remand filed September
9, 2003









Reversed
and Remanded and Memorandum Opinion on Remand filed September 9, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-96-01555-CV

____________

 

JUAN ANTONIO LOZANO, SR., BLANCA SAUREZ LOZANO, MONICA
I. LOZANO, SANDRA WARNER, AND EDUARDO A. LOZANO, Appellants

 

V.

 

DEANA ANN LOZANO, Appellee

 



 

On Appeal from the
280th District Court

Harris
County, Texas

Trial Court Cause
No. 95-023500

 



 

M E M O R
A N D U M   O P I N I O N   O N  
R E M A N D








This
suit for interference with the possessory rights of a parent is before the
court on remand from the supreme court.  See
Lozano v. Lozano, 52 S.W.3d 141 (Tex. 2001) (per curiam).  In our original opinion, we concluded the
evidence was legally insufficient to support the jury=s findings that appellants Juan
Antonio Lozano, Sr., Blanca Suarez Lozano, Monica I. Lozano, Sandra Warner, and
Eduardo A. Lozano (AAlex@) aided or assisted Juan Lozano, Jr., in taking, or retaining
possession, or concealing the whereabouts, of Bianca Lozano.  Lozano v. Lozano, 983 S.W.2d 787, 789,
792 (Tex. App.CHouston[14th Dist.] 1998), rev=d 52 S.W.3d 141 (Tex. 2001) (per curiam).[1]  We therefore reversed the judgment of the
trial court and rendered judgment for all appellants on the intentional
interference claims of appellee Deana Lozano. 
Id. at 794.  Deana obtained
review, and the supreme court affirmed our judgment in favor of Sandra and Juan
Senior, but reversed our judgment as to Blanca, Alex, and Monica, holding the
evidence was legally sufficient to sustain the jury=s verdict, and remanded to this court
to consider their remaining points of error. 
Lozano, 52 S.W.3d at 144.[2]








The
following points of error are before the court on remand: (1) the legal and
factual sufficiency of the evidence to support the jury=s findings of a causal link between
Deana=s damages and Juan Junior=s violation of the court order
providing for possessory interest in Bianca, (2) the factual sufficiency of the
evidence to support the jury=s findings Blanca, Monica, and Eduardo (collectively, Aappellants@) aided or assisted Juan Junior in
taking or retaining possession of Bianca in violation of the court order, (3)
the legal and factual sufficiency of the evidence to support the jury=s findings appellants acted with
malice, and (4) the legal and factual sufficiency to support the jury=s damages findings.  We first address the legal sufficiency of the
evidence of causation and conclude the evidence was legally sufficient.  We then address the legal sufficiency of the
evidence on damages.

Concluding
the evidence was legally insufficient to support Deana=s future medical care damages, we
remand on all damages because the charge did not segregate damages.  See Texas Industries, Inc. v. Vaughan,
919 S.W.2d 798, 804 (Tex. App.CHouston [14th Dist.] 1996, writ denied) (holding, when jury
charge does not segregate elements of damage and require a finding as to each
one, but one element has no supporting evidence, case must be remanded on all
damages); see also Harris County v. Smith, 96 S.W.3d 230, 235B36 (Tex. 2002) (in charge error case,
remanding to trial court after concluding appellant was prevented from properly
presenting case to appellate courts when trial court submitted broad form
damages question with element for which evidence was legally
insufficient).  Remanding for a new trial
on unliquidated damages, we also remand for a new trial on liability.  See Tex.
R. App. P. 44.1(b) (providing court may not order separate trial on
unliquidated damages if liability contested). 
Given our resolution of the damages point of error, we need not address
the remaining points of error.

FACTUAL
AND PROCEDURAL BACKGROUND

The
facts and procedural background are set forth at length in our original opinion
and that of the supreme court.  In the
context of discussing the points of error, we set forth only those facts
necessary to disposition of the cause.








DISCUSSION

Causation

The jury
was instructed to find the Asum of money, if any, if paid now in cash, [that] would
fairly and reasonably compensate Deana Lozano for the harm, if any, that
resulted from the occurrence in question.@ 
In their first point of error, appellants challenge the legal and
factual sufficiency of the evidence to support the causal link between appellants= conduct and appellee=s damages.  In actions under former Family Code chapter
36, however, the relevant cause is violation of the court order, not the
actions of those allegedly aiding and assisting the person violating the court
order.

The
statutory framework begins by defining the liability of the person who directly
interferes with a parent=s possessory rights, in this case Juan Junior:  AA person who takes or retains
possession of a child or who conceals the whereabouts of a child in violation
of a court order that provides for possessory interests in a child may be
liable for damages to the person who is denied a possessory interest in the
child.@  
Act of May 19, 1983, 68th Leg., R.S., ch. 328, ' 1, sec. 36.02(a), 1983 Tex. Gen.
Laws 1725, 1726 (recodified 1995) (current version at Tex. Fam. Code Ann. ' 42.002(a) (Vernon 2002)).  Chapter 36 also provides for the joint
liability of  those who aid or assist the
direct actor:  AEach person who aids or assists in
conduct for which a cause of action is authorized by Subsection (a) of this
section is jointly and severably [sic] liable for damages.@ 
Id. ' 1, sec. 36.02(c) (current version at Tex. Fam. Code Ann. ' 42.003(a) (Vernon 2002)).  Finally, Family Code section 36.03(a) ties
damages to violation of the order providing for possessory interests in the
child:

 (a) Damages under this chapter may include:

(1) the
actual costs and expenses of the petitioner in locating a child who is the
subject of the court order;

(2) the
actual costs and expenses of the petitioner in recovering possession of the
child, if the petitioner is entitled to possession of the child;








(3) the
actual costs and expenses, including attorney=s fees,
of the petitioner in enforcing the court order that was violated;

(4) the
actual costs and expenses, including attorney=s fees,
of bringing the suit under this chapter; and

(5) the
value of mental suffering and anguish incurred by the petitioner  because of a violation of the court order.

 

Id. ' 1, sec. 36.03(a) (current version at
Tex. Fam. Code Ann. ' 42.006(a) (Vernon 2002) (emphasis
added).

Given
the plain language of the statute, the only Aoccurrence in question@ that caused any damages is Juan
Junior=s violation of the court order, not
the actions taken by persons allegedly aiding or assisting Juan Junior.  The undefined word Adamages@ in section 36.02(c) refers to the
specific Adamages@ described in sections 36.02(a) and
36.03(a).  Were the gravamen of the
causation element the actions of the alleged assistants, the causation element
and the aiding element would be redundant. 
Thus, our focus in analyzing causation is on whether Juan Junior=s actions caused Deana harm, not on
whether appellants= actions caused Deana harm.








In reviewing
a Ano evidence@ or legal sufficiency of the evidence
point, we consider only the evidence and reasonable inferences that tend to
support the jury=s findings, and we disregard all evidence and inferences to
the contrary.  Responsive Terminal
Sys., Inc. v. Boy Scouts of Am., 774 S.W.2d 666, 668 (Tex. 1989); Penick
v. Christensen, 912 S.W.2d 276, 292 (Tex. App.CHouston [14th Dist.] 1995, writ
denied).  An appellate court will
conclude the evidence is legally insufficient if (1) there is a complete
absence of evidence for the finding, (2) there is evidence to support the finding,
but rules of law or evidence bar the court from giving any weight to the
evidence, (3) there is no more than a mere scintilla of evidence to support the
finding, or (4) the evidence conclusively establishes the opposite of the
finding.  See Merrell Dow Pharms., Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, ANo Evidence@ and AInsufficient Evidence@ Points of Error, 38 Tex. L. Rev. 361, 362B63 (1960)).  If we find any evidence of probative force to
support the finding, we overrule the point and uphold the finding.  ACS Investors, Inc. v. McLaughlin, 943
S.W.2d 426, 430 (Tex. 1997) (citing S. States Transp., Inc. v. State,
774 S.W.2d 639, 640 (Tex. 1989)).

Deana
testified that about a year before trial she first sought medical attention as
a result of the disappearance of Bianca. 
She testified she had to miss work for court and depositions.  When asked about the effect Bianca=s abduction had on her, Deana
testified:

Well, it=s the most awful feeling in the world to have a part
of your life taken away from you that can=t be
replaced by money or another child or going on vacation.  You can=t forget
about it.  It follows you wherever you
go.  I can=t
eat.  I can=t
sleep.  I have a problem concentrating at
work.

. . .

It has
totally changed my life and consumed my life to find her and I will never stop
looking for her until I find her.  I
cannot B I can=t sleep at night. 
I can=t eat.  I can=t concentrate at work. 
I have no wanting to go out and B and
socialize with people >cause that=s all I
have to talk about and this is very hard. 
I=ve had to seek counseling.  I have to be on medication.

 

Deana=s family physician, Dr. P.T. Eichelberger
also testified.  Deana visited
Eichelberger on February 20, 1995, before the abduction, and was treated for Adepression secondary to family
affairs.@ 
Dr. Eichelberger prescribed an antidepressant drug (Effexor) for
her.  He stated that her depression
increased substantially after the abduction of Bianca.  In his entry dated March 22, 1996, Dr. Eichelberger
indicated that Deana had been having frequent Apanic attack[s] relative to her
daughter being taken from her by her ex husband.@  
Deana told Dr. Eichelberger she had been to Mexico looking for Bianca
and had not been taking her antidepressant medication.  Dr. Eichelberger stated that if Deana had
taken her medication, Ait would have improved her situation some what.@ 
Dr. Eichelberger advised Deana to start on the medication again.[3]








Finally,
Deana=s attorney testified she had Adocumented the expenses that have
been incurred in the attempts to locate this child and they have been enormous.@ 
The documents themselves, however, were excluded on appellants= hearsay objection.

 Considering only the evidence and reasonable
inferences that tend to support the jury=s findings, and disregarding all
evidence and inferences to the contrary, we conclude the evidence was legally
sufficient to support the jury=s findings of causation. 
We overrule appellant=s first point of error to the extent it challenges the legal
sufficiency of the evidence.  Because of
our disposition of the damages issue below, we need not address the factual
sufficiency of the evidence of causation.

Damages

In their
fourth point of error, appellants argue the evidence was legally and factually
insufficient to support the jury=s award of damages in question number
3, which provided:

What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate Deana Lozano for the harm, if any, that resulted from the
occurrence in question?

Consider the elements of damages listed below and none other.  Do not include interest on any amount of
damages you find.

a.  Actual costs and expenses
incurred, including attorney=s fees.

b.  Mental suffering and anguish.

c.  Medical care in the future.

Answer in dollars and cents for damages, if any, that were sustained in
the past and that, in reasonable probability, will be sustained in the future.

Answer:  $1,000,000.00








Appellants
objected to the question on several grounds. 
They objected to 3.a. because the court had excluded Deana=s offer of actual costs and expenses,
and there was therefore no evidence of actual costs and expenses, and Deana had
not segregated her attorney=s fees for the interference cause of action from fees for her
defamation cause of action.  Appellants
objected to 3.c. because there was no evidence from which the jury could assess
an amount of money for medical care. 
Appellants argued, AThe only evidence was with regard to future medical care or
future health care services were [sic] by a psychologist who is not a medical
doctor and cannot prescribe medicine.@

Applying
the standards for reviewing legal sufficiency of the evidence set forth above,
we conclude there was no evidence to support an award for medical care in the
future.  In considering the legal
sufficiency of the evidence to support an award of future medical expenses, we
must examine the entire record for any probative evidence and disregard all
evidence to the contrary.  Rosenboom
Mach. & Tool v. Machala, 995 S.W.2d 817, 828 (Tex. App.CHouston [1st Dist.] 1999, pet.
denied) (citing Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); City
of San Antonio v. Vela, 762 S.W.2d 314, 320 (Tex. App.CSan Antonio 1988, writ denied)).  Texas follows the Areasonable probability rule@ for future damages for personal
injuries.  Rosenboom, 995 S.W.2d
at 828; Vela, 762 S.W.2d at 321. 
Under this rule, Texas courts have consistently held the award of future
medical expenses rests within the sound discretion of the jury.  Rosenboom, 995 S.W.2d at 828; Vela,
762 S.W.2d at 321. The jury can determine the amount of future medical expenses
and care based on the injuries suffered, the medical care rendered before
trial, the progress toward recovery under the treatment received, and the
condition of the injured party at the time of trial.  Rosenboom, 995 S.W.2d at 828; Vela,
762 S.W.2d at 321.  To sustain an award
of future medical expenses, however, (1) the plaintiff must present evidence to
establish, in all reasonable probability, future medical care will be required,
and (2) she must present evidence of the reasonable cost of that care.  Rosenboom, 995 S.W.2d at 828; see
also MCI Telecomms.  Corp. v. Tex. Utils.
Elec. Co., 995 S.W.2d 647, 654B55 (Tex. 1999) (stating rule
regarding future damages generally).








 Appellee identifies two sources of such
evidence:  Dr. Eichelberger and Dr. Kevin
Jones.[4]  Eichelberger testified Deana=s depression increased substantially
after Bianca=s abduction.  He expected her to require future medial
treatment that was Aprobably going to be long term and this is going to be contingent
upon the period of time before she=s able to get the child returned to
her@ (emphasis added).   Nevertheless, Eichelberger also testified
that his records did not reflect any treatment for depression after the
abduction in April, 1995.  As set forth
in the previous section, in his entry dated March 22, 1996, Dr. Eichelberger
indicated Deana had been having frequent Apanic attack[s] relative to her
daughter being taken from her by her ex husband.@ 
Deana also told Eichelberger she had been to Mexico looking for Bianca
and had not been taking her antidepressant medication.  Eichelberger said, if Deana had taken her
medication, Ait would have improved her situation
some what,@ and he advised Deana to start the
medication again.

Although
Eichelberger=s records for Deana=s treatment were placed into
evidence, there is nothing in the record showing his charges.  Eichelberger did not testify about his fees
or whether they were reasonable and necessary.

Jones is
a psychologist who first saw Deana on February 27, 1995, before the
abduction.  Dr. Jones stated Deana  told him that she had been suffering from
panic attacks as a result of her pending divorce from Junior and physical abuse
by Junior.  When asked whether in his
opinion Deana would have a long range effect from the abduction, Jones responded,
AOh, lifelong.@ 
When asked whether Deana would require future medical and psychological
care, Dr. Jones stated:

That=s what I=m
concerned about because not knowing kind of protracts this.  We=re not
sure what the status of Bianca is, whether she is dead or alive, where she is,
if she=s okay or not. 
And if at some point in the future she finds out where she is and can=t get her back or whatever, it could rekindle all of
this progress that she=s made.  

 








Dr.
Jones estimated that the cost of treatment by a psychologist for a person who
had to be in prolonged treatment would be about $100.00 per hour and that five
years treatment would be $25,000.00. There is no evidence of what Deana may
have paid Jones for  treatment after the
April 7, 1995, abduction.[5]

The
evidence in the present case is comparable to that held legally insufficient in
Whole Foods Mkt. Southwest, L.P. v. Tijerina, 979 S.W.2d 768, 781B82 (Tex. App.CHouston [14th Dist.] 1998, pet.
denied).  In Whole Foods, the plaintiff=s expert, Dr. Newell, could not
express an opinion based on reasonable medical probability as to whether the
plaintiff, Tijerina, would suffer future complications as a result of the
injury to her finger.  Id. at
782.  Newell=s deposition was read into the
record, in which Newell stated if Tijerina were to undergo a second
surgery, his fee would be $1,500.00.  Id.  This court held, in pertinent part, that ATijerina=s evidence at trial supporting her
claim for future medical costs included Dr. Newell=s speculation, not based on a
reasonable medical probability, that Tijerina might need a second
surgery for $1,500.00 and her testimony regarding the amount and cost of Advil.@ 
Id. (emphasis added).  This
court held that it Awill not uphold an award of future medical costs based on
speculation.@ 
Id. (citing Harvey v. Culpepper, 801 S.W.2d 596, 599 (Tex.
App.CCorpus Christi 1990, no writ)).  This court agreed with Whole Food=s contention there was no evidence to
support the jury=s verdict for future medical costs in the amount of $20,000.00.  Id. at 781.

Jones= testimony about the need for
psychological care in the future is similarly speculative.  We conclude the evidence was legally
insufficient to support an award for future medical expenses.

Remand and
Appellants= Third Point of Error








Because
the trial court failed to segregate damages, the case must be remanded on all
damages if we find reason to remand on one element of damages.  See Vaughan, 919 S.W.2d at 804
(holding, when jury charge does not segregate elements of damage and require a
finding as to each one and one element has no supporting evidence, case must be
remanded on all damages); see also Smith, 96 S.W.3d at 235B36 (in charge error case, remanding
to trial court after concluding appellant was prevented from properly
presenting case to appellate courts when trial court submitted broad form
damages question with element for which evidence was legally insufficient).  We therefore remand for a new trial on all
compensatory damages covered by question 3.

AThe court may not order a separate trial solely on
unliquidated damages if liability is contested.@ 
Tex. R. App. P. 44.1(b).  We therefore remand for a new trial on
liability.  Because of our disposition of
appellants= point of error four, we need not
address the remaining points of error.[6]

CONCLUSION

We
remand for a new trial on Deana=s cause of action against Blanca, Alex, and Monica for aiding
or assisting Juan Lozano, Jr., in taking, or retaining possession, or
concealing the whereabouts, of Bianca Lozano.

 

 

 

/s/            John
S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion on Remand filed September 9, 2003.

Panel consists of Justices Anderson,
Seymore, and Guzman.











[1]  As we
explained in our original opinion:

 

Juan Lozano and his daughter disappeared during early
April, 1995.  Before April 20, 1995, when
the law changed, Texas Family Code Section 36.02(a) provided:

 

A person who takes or retains possession of a child or
who conceals the whereabouts of a child in violation of a court order that
provides for possessory interests in a child may be liable for damages to the
person who is denied a possessory interest in the child.  

 

Prior to April 20, 1995, Section 36.02(c) provided:

 

Each person who aids or assists in conduct for which a
cause of action is authorized under Subsection (a) of this section is jointly
and severally liable for damages.  

 

Title 2 of the Family Code, which included Chapter 36,
was repealed effective April 20, 1995. 
The Family Code was recodified by reenacting Title 2 effective April 20,
1995. [See Act of May 19, 1983, 68th Leg., R.S., ch. 328, ' 1, 1983 Tex. Gen. Laws 1725, 1726 (recodified 1995)
(current version at Tex. Fam. Code Ann.
'' 42.002, 42.003 (Vernon 2002))].

 

Lozano v. Lozano, 983 S.W.2d 787, 788 n.1 (Tex. App.CHouston
[14th Dist.] 1998), rev=d, 52 S.W.3d 141 (Tex. 2001) (per curiam).





[2]  In our
original opinion, we also considered the legal and factual sufficiency of the
evidence on Deana=s defamation claims against Sandra and Blanca.  Lozano, 983 S.W.2d at 793B94.  We held the
evidence was legally and factually sufficient to support the defamation claim
against Sandra, but legally insufficient to support the claim against
Blanca.  Id.  We therefore affirmed the judgment against
Sandra on Deana=s defamation claims, but rendered judgment for Blanca
on Deana=s defamation claims. 
Id. at 794. The supreme court did not disturb these holdings and
they are not before this court on remand.   






[3]    Dr.
Eichelberger also testified that his records did not reflect any treatment for
depression after the abduction in April, 1995. 
Dr. Eichelberger stated that Deana came in on July 14, 1995, for a
tubercular test only.  Deana saw Dr.
Eichelberger three times after July 14, 1995, for ailments unrelated to
depression or any psychological condition related to the abduction of
Bianca.  In reviewing the legal
sufficiency of the evidence, however, we consider the evidence in a light most
favorable to the verdict.  Weirich v.
Weirich, 833 S.W.2d 942, 945 (Tex. 1992).





[4]  In addition,
we consider Deana=s testimony:  AIt has totally changed my life and consumed my life. .
. .  I cannot B I can=t sleep at night. 
I can=t eat.  I can=t concentrate at work. . . .  I=ve had
to seek counseling.  I have to be on
medication.@  See Rosenboom
Mach. & Tool v. Machala, 995 S.W.2d 817, 828 (Tex. App.CHouston [1st Dist.] 1999, pet. denied) (stating jury
had right to consider victim=s testimony regarding pain she had suffered).





[5]  There is
correspondence from PSA Case Management/John Hancock and from Cost Care
indicating authorization for payment to Jones for services rendered to Deana.





[6]  Appellants would
be liable for exemplary damages only if appellants are found liable for
damages.  See Act of May 19, 1983,
68th Leg., R.S., ch. 328, ' 1, sec. 36.03(b), 1983 Tex. Gen. Laws 1725, 1727
(recodified 1995) (current version at Tex.
Fam. Code Ann. ' 42.006(b) (Vernon 2002)).  It would be premature to rule on the issue of
exemplary damages at this time.  See
Texas Industries, Inc. v. Vaughan, 919 S.W.2d 798, 804 (Tex. App.CHouston [14th Dist.] 1996, writ denied).