Reversed and Remanded and Opinion filed September 27, 2007








Reversed and Remanded and Opinion filed September 27,
2007. 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00852-CV

_______________

 

V.E. JOAHANNE THOMAS-SMITH, Appellant

 

V.

 

JAMES E. MACKIN, Appellee

                                                                                                                                               


On Appeal from 155th District Court

Waller County, Texas

Trial Court Cause No. 03-05-16832

                                                                                                                                               


 

O P I N I O N

 

In this defamation case, V.E.
Joahanne Thomas-Smith appeals  on numerous grounds a judgment entered in favor
of James E. Mackin.  We reverse and remand.

                                                                   Background








During a telephone conversation,
Thomas-Smith, the Provost and Senior Vice President of Academic and Student
Affairs of Prairie View A&M University (APrairie View@), questioned Dr. Gerard Rambally,
the Dean of Arts and Science of Prairie View, about Rambally=s reasons for recommending Mackin, a
Ph.D. in chemical oceanography, to be appointed interim Chairman of the Prairie
View Chemistry Department and about not having assigned Mackin a full teaching
load for the upcoming semester.  One of Thomas-Smith=s questions or comments in this
conversation was to the effect that Mackin and Rambally had a Alove@ or Alover@ relationship.  After Mackin, a
married man, learned of this comment (the Acomment@), he filed this action for slander
against Thomas-Smith.  The case was tried to a jury, and judgment was entered
in accordance with the jury=s verdict, awarding Mackin $40,000 in damages against
Thomas-Smith.

                                                               Directed
Verdict

Thomas-Smith=s first issue contends that the trial
court erred by denying her motion for directed verdict[1]
on the ground that the comment was not defamatory as a matter of law because it
was a
rhetorical hyperbole rather than a statement of fact.[2]








 Slander is a
defamatory statement[3]
that is orally communicated to a third person without legal excuse.  Randall=s Food Markets,
Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995).  Among other things, a
defamatory statement must be sufficiently factual to be susceptible of being
proved objectively true or false, as contrasted from a purely subjective
assertion.  See Milkovich v. Lorain Journal Co., 497 U.S. 1, 21-22
(1990).  It must also be such that a reasonable factfinder could conclude that
the statement implies an actual assertion of the purported fact, as contrasted
from loose, figurative, or hyperbolic language that would negate the impression
that the declarant was seriously maintaining that the fact was literally true. 
See id.[4]

An allegedly
defamatory publication is construed as a whole in light of the surrounding
circumstances based on how a person of ordinary intelligence would perceive
it.  New Times, Inc. v. Isaacks, 146 S.W.3d 144, 154 (Tex. 2004).  The
appropriate inquiry is thus objective, not subjective.  Id. at 157. 
Whether a statement is capable of a defamatory meaning is generally a question
of law for the court.  Id. at 155.  But when a publication is of
ambiguous or doubtful import, the jury must determine its meaning.  Id.

In this case, by
describing a relationship between individuals, the comment was sufficiently
factual to be susceptible of being proved true or false.  However, it is not
clear from the context and surrounding circumstances whether Thomas-Smith was
making the comment: (1) sarcastically, to figuratively express her disbelief
concerning the recommendation; or (2) sincerely, out of concern that the
recommendation had been made for improper motives.  Because of this ambiguity,
Thomas-Smith=s first issue fails to demonstrate that the comment
was not defamatory as a matter of law, and is overruled.

Thomas-Smith=s second issue
contends the evidence conclusively proves there was no publication because the
parties who heard the comment did not understand it to be defamatory.  A person
publishes a slanderous remark if she communicates it to a third person who is
capable of understanding its defamatory meaning and in such a way that the
person did understand its defamatory meaning.  Lozano v. Lozano, 983
S.W.2d 787, 793 (Tex. App.CHouston [14th Dist.] 1998), aff=d in part, rev=d in part on other
grounds, 52 S.W.3d 141 (Tex. 2001).








The undisputed
evidence in this case shows that two people heard and understood the comment. 
One was Rambally, who understood it to assert that Mackin had a sexual or
romantic relationship with him and that he (Rambally) was appointing people to
positions based on his relationship with them rather than their credentials. 
The second person was Darlene Knebel, Rambally=s secretary, who
understood it to assert that Rambally was recommending Mackin to be Chemistry
Department Head because of Rambally=s A>love relationship=@ with Mackin.  Because
there was evidence of publication, Thomas-Smith=s second issue
fails to demonstrate that the trial court erred in denying the motion for
directed verdict on this ground, and is overruled.

Jury Charge

Thomas-Smith=s fifth issue
contends, in part, that the trial court erred by refusing her requests to
include in the court=s charge to the jury questions on the
defenses of official immunity and qualified privilege.

A trial court must
submit the questions, instructions, and definitions that are raised by the
pleadings and evidence.  Tex. R. Civ. P.
278.  A judgment cannot be permitted to stand when a trial court=s refusal to
submit a question denies a party the submission of a viable affirmative defense
that has been so raised.  Exxon Corp. v. Perez, 842 S.W.2d 629, 631
(Tex. 1992).

One of the
elements of the defense of official immunity is good faith, which requires an
objective determination of whether a reasonably prudent official, under the
same or similar circumstances, could have believed that his conduct was
justified based on the information he possessed when the conduct occurred.  Joe
v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 162, 164 (Tex. 2004).  As
evidence of the element of good faith to support the submission of a jury
question on official immunity, Thomas-Smith relies on the testimony of George
C. Wright, President of Prairie View, and Thomas-Smith.








However, the
testimony of Wright that Thomas-Smith=s brief cites for
this purpose  is deposition testimony that was attached as an exhibit to
Thomas-Smith=s motion for summary judgment.  Because Thomas-Smith=s brief cites no
portion of the record where any such testimony by Wright was admitted into
evidence at trial, it does not establish that this evidence was before the jury
so as to support a question in the court=s charge. 
Similarly, the relied upon testimony by Thomas-Smith was the following:

Q:      And in that conversation, August of 2002, whatever statement
that was, that was said, do you believe it was lawful?

A:      Yes.  Whatever statement was said in the conversation about the
teaching load or whatever, I believe it was lawful.

*        *        *        *

Q:      When you were asked about whether it was lawful, what did you,
what was your definition of being lawful?

A:      Well, within the role and scope of my job and not against the
constitution, or policies or whatever.

Q:      [I]f the statement was made that you say may have been made,
and that statement was that you, Dr. Rambally and Dr. Mackin have a lover
relationship, and that is why you wanted to appoint him as interim dean,
interim department, would that be lawful?

A:      Sir, if I said that, it would be lawful.

However, this
testimony does not raise a fact issue on the good faith element of official
immunity because: (1) it does not address the good faith standard (whether a
reasonably prudent official, under the same or similar circumstances, could
have believed that his conduct was justified based on the information he
possessed when the conduct occurred); (2) it is Thomas-Smith=s subjective view
rather than evidence of an objective standard; and (3) it is conclusory,
providing no factual basis or foundation to support the stated conclusion. 
Accordingly, we overrule the portion of Thomas-Smith=s fifth issue that
challenges the trial court=s denial of her request to submit a jury
question on official immunity and turn to her challenge the denial of a jury
question on the defense of qualified privilege.








Where, as here,
there is not alleged to be a public figure plaintiff, a media defendant, or a
defamatory statement involving a matter of public concern, the falsity of the
statement is generally presumed,[5]
and the truth of the statement is an affirmative defense that must be proved by
the defendant.  See Randall=s food Markets
Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995).  Similarly, in the
absence of a privilege, malice[6]
is inferred from the fact that a defamatory statement is false.  See Int=l & G.N.R. Co.
v. Edmundson, 222 S.W. 181, 183 (Tex. Comm=n App. 1920,
holding approved); Bradstreet Co. v. Gill, 72 Tex. 115, 9 S.W. 753, 121
(Tex. 1888).  Conversely, where a defamatory statement is privileged, the
inference of malice is overcome, and it becomes the plaintiff=s burden to
establish malice by evidence other than the falsity of the statement, if any.  Id.

In this case,
Thomas-Smith requested a jury question on whether she was entitled to the
following qualified privilege:

AQualified privilege@ exists when a
communication is made in good faith and the author, the recipient, or a third
person has an interest that is sufficiently affected by the communication.  The
effect of the privilege is to justify the communication which is made with
proper motive and without actual malice.  A finding of actual malice must be
supported by clear and convincing proof.[[7]]

There is no
dispute that such a qualified privilege exists under Texas law.  See, e.g.,
Cain v. Hearst Corp., 878 S.W.2d 577, 582 (Tex. 1994).  Because
Thomas-Smith pleaded the affirmative defense of qualified privilege, the trial
court was required to submit this question if the defense was raised by the
evidence.  See Tex. R. Civ. P.
278.








In that regard, Thomas-Smith
testified that she made the comment during discussions on a subject about which
she had a duty to communicate with Rambally.  At the time, Rambally needed to
fill the position of interim head of the Chemistry Department, and needed
Thomas-Smith=s approval to do so.  Thomas‑Smith and Rambally also had the mutual
task of coordinating Mackin=s teaching load as a chemistry professor following a
reduction in force.  Thomas‑Smith made the comment during a telephone
conversation with Rambally concerning these matters.  This evidence was
sufficient to raise a fact issue whether the comment was made concerning a
matter on which Thomas-Smith and Rambally had a common interest.

Mackin argues that Thomas-Smith was
not entitled to this instruction because the comment was: (1) published to
Knebel, who did not share the common interest; (2) not made in good faith; and
(3) made with malice.

As to the first contention, if a
defamatory statement is privileged, the casual or accidental presence of a
third party will not take it out of the privilege.  Flowers v. Smith, 80
S.W.2d 392, 393 (Tex. Civ. App.CAmarillo 1934, no writ).  The Restatement thus explains:

One privileged to publish defamatory
matter may, without abuse of the privilege use a method of communication that
involves an incidental publication of the defamatory matter to persons to whom
he is not otherwise privileged to publish it, if the method, although not the
only way in which the information can be effectively communicated, is customary
and sanctioned by business or other necessity.  Thus the fact that dictation to
a stenographer involves as a necessary incident the communication of the
defamatory matter to her does not make the sending of a dictated business
letter to the person to whom the writer is privileged to send it an abuse of
the privilege.  So too, the fact that it is a business custom for clerks and
secretaries to open business correspondence of their superiors does not make
the sending of a business letter to the office of the privileged recipient an
abuse of the privilege.  On the other hand, when the method of communication is
unnecessary and unsanctioned by the a custom based on ordinary necessities of
business, the publication of the defamatory matter to persons not privileged to
receive it that is incidental to those methods is not privileged. Thus the use
of a postcard in place of a letter is an excessive publication.  So too, the
use of a telegram to communicate information that could be effectively
communicated in a sealed letter is an excessive publication, although it would
not be so if the information, to be valuable, must be speedily received.








Restatement (Second) of Torts ' 604 cmt. b (1977).  In this case,
when the comment was made, Knebel was in Rambally=s office to do filing, a task Knebel
occasionally performed while, as here, Rambally was on the speaker-phone.  Under these
circumstances, the publication of the comment to Knebel did not itself
conclusively negate the existence of a qualified privilege so as to preclude a
jury question on that defense.

Mackin=s contention that
a jury question on qualified privilege should not have been submitted because
there is no evidence raising a fact issue on good faith is based on the meaning
of that phrase as an
element of the defense of official immunity, i.e., whether a reasonably
prudent Provost could have believed that her conduct was justified.  However,
we can find no authority suggesting that the definition of good faith for
official immunity also applies to the defense of qualified privilege. 
Therefore, the failure to submit a question on the defense of qualified
privilege cannot be affirmed on the lack of evidence, if any, of good faith as
it would apply to official immunity.








Texas cases refer to the concept of Agood faith@ in the context of qualified
privileges in an inconsistent manner.  Some describe good faith as being
presumed where a conditional privilege exists (as if it is simply the
non-existence of malice),[8] whereas
others refer to it as an element of the conditional privilege,[9]
and, thus, something that must be proved before the privilege arises.  In
addition, we have found no Texas cases which define Agood faith@ in this context.  Because no formal
legal definition appears to exist, Agood faith@ would have had its commonly
understood meaning pursuant to the court=s general charge to the jury.[10] 
Because the circumstances surrounding the making of the comment are at least
sufficient to raise a fact issue on whether it was made in good faith, as that
term is commonly understood, the failure to submit a question on qualified
immunity cannot be affirmed on a lack of evidence of good faith.

Lastly, Mackin
argues that Thomas-Smith was acting with malice because she had no evidence
that Mackin and Rambally had a Alove@ or Alover@ relationship that
would influence Rambally=s decision making.  Mackin further points
to evidence that Thomas-Smith was aware that Mackin was married with children.

In this context,
malice means making the defamatory statement with knowledge of its falsity or
in reckless disregard as to its truth.  Masson v. New Yorker Magazine, Inc.,
501 U.S. 496, 510 (1991); New Times, 146 S.W.3d at 162.  However,
because there was evidence that the comment was subject to a qualified
privilege, Mackin had the burden to prove malice, i.e., that
Thomas-Smith actually entertained serious doubts as to the truth of the
comment.  See Masson, 501 U.S. at 510; New Times, 146 S.W.3d at
162.  Moreover, the qualified privilege can exist even when the statement is
untrue or its truth is disputed.[11] 
Therefore, a lack of evidence of the truth of the comment would also not
preclude a jury question on the qualified privilege defense.








Because the defense of qualified
privilege was properly raised by the pleadings and evidence, the trial court=s refusal to submit Thomas-Smith=s requested jury question on that
defense was reversible error.  See Perez, 842 S.W.2d at 631.  Therefore,
we sustain Thomas-Smith=s fifth issue to that extent, reverse the judgment of the
trial court, and remand the case to the trial court for further proceedings;
and we need not address Thomas-Smith=s remaining challenges to the
judgment.[12]

 

 

/s/        Richard H. Edelman

Senior Justice

 

 

Judgment rendered and Opinion filed
September 27, 2007.

Panel consists of Justices Fowler,
Frost, and Edelman.*









[1]           A directed verdict is proper if no evidence of probative
force raises a fact question on  an issue that is essential to the plaintiff=s right of recovery.  Prudential
Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).





[2]           Although Thomas-Smith=s motion for directed verdict, made in open court,
asserted that the comment was not defamatory, it gave no reason for that
assertion. However, because we conclude that the reason presented on appeal is
without merit, need not rule on whether the complaint was preserved.





[3]           A defamatory statement is one that is
injurious to reputation, whether true or false.  See Bentley v. Bunton,
94 S.W.3d 561, 587 (Tex. 2002).





[4]           See generally Eric Scott Fulcher, Note, Rhetorical Hyperbole and the
Reasonable Person Standard: Drawing the Line Between Figurative Expression and
Factual Defamation, 38 Ga. L. Rev..
717, 720 (2004).





[5]           See Hurlbut v. Gulf Atl. Life Ins. Co.,
749 S.W.2d 762, 766 (Tex. 1988).





[6]           In this context, a statement is made with
malice when it is made with either knowledge of its falsity or reckless
disregard whether it is true.  Randall=s, 891
S.W.2d at 646.





[7]           Definitions of Aactual malice@
and Aclear and convincing proof@ were also submitted with this question but are not
material to our disposition.





[8]           See, e.g., Edmundson, 222 S.W. at
183 (AIf the occasion is privileged, a proper and sufficient
motive is shown; and thereby the inference of malice is repelled, and in lieu
thereof the presumption obtains that the communication was made in good faith.@); Simmons v. Dickson, 110 Tex. 230, 213 S.W.
612, 612 (1919) (reciting both standards).





[9]           See, e.g., Cain, 878 S.W.2d at 582 (AQualified privileges against defamation exist at
common law when a communication is made in good faith . . . .@); Diamond Shamrock Ref. & Mktg. Co., 844
S.W.2d 198, 210 (Tex. 1992) (same); Perry Bros. Variety Store, Inc. v.
Layton, 119 Tex. 130, 25 S.W. 310, 313 (Tex. 1930) (same); Mo. Pac.Ry.
Co. v. Richmond, 73 Tex. 568, 11 S.W. 555, 575 (1889) (AWe understand the law to be that a communication made
in good faith, in reference to a matter in which the person communicating has
an interest, . . . is privileged . . . .@); 
Bradstreet, 9 S.W. at 119-20 (Awhatever
was said orally by defendants about plaintiffs and their business was said in
good faith, and in confidence to their subscribers, who were by reason of their
business relations with the plaintiffs interested in knowing their financial
and business standing, and in answer to requests made by their subscribers in
relation thereto.  This being so, the statements thus made by defendants are
privileged communications.@).





[10]          This instruction stated, AWhen words are used in this charge in a sense that
varies from the meaning commonly understood, you are given a proper legal
definition, which you are bound to accept in place of any other meaning.@





[11]          See, e.g., Dun & Bradstreet, Inc. v.
O=Neil, 456
S.W.2d 896, 898-99 (Tex. 1970); Bradstreet, 9 S.W. at 757; Richmond,
11 S.W. at 557-58.





[12]          See Tex. R. App. P. 47.1 (requiring
an appeals court opinion to be as brief as practicable in addressing the issues
raised that are necessary to final disposition of appeal).





*           Senior Justice Richard H. Edelman sitting
by assignment.